Martha LaManda **GIVENS**

v.

**THIRD NATIONAL BANK IN NASH-
VILLE, Trustee, et al.**

Supreme Court of Tennessee.

Sept. 30, 1974.

Rehearing Denied Nov. 25, 1974.

Thomas M. Evans, Nashville, A. P. Ottarson, Jr., Franklin, for appellant.

Harris A. Gilbert, Harlan Dodson, David G. Gray, W. Ovid Collins, Jr., Thomas Wardlaw Steele, Nashville, for appellees.

## OPINION

HARBISON, Justice.

This case involves the construction and interpretation of a trust instrument, and a determination of whether or not certain of the undistributed or surplus income from the trust may be distributed to remaindermen prior to the expiration of specified life estates.

The facts of the case are undisputed, and the case is before this Court upon a written stipulation, which includes portions of the record of former proceedings involving this trust.

It is stipulated that on February 11, 1960 Mr. Frank A. Givens executed an inter vivos trust, which is in the record. Pursuant to the trust instrument, the settlor deposited with the Third National Bank in Nash-

ville, as Trustee, certain securities, including a substantial number of shares of Eastman Kodak Company.

The settlor died within a few months after the establishment of the trust, and his widow filed suit in the Chancery Court of Davidson County, Tennessee, challenging the validity of the trust. Among other things she claimed that it was a fraud upon her marital rights. She sought a determination of her rights and a construction of the trust instrument. The case was tried in the Chancery Court of Davidson County, Tennessee and subsequently appealed to the Tennessee Court of Appeals at Nashville. The opinion of the Middle Section of the Court of Appeals, filed July 26, 1963, is part of the present record.

We deem it appropriate to discuss the terms and provisions of the trust instrument and the previous proceedings before disposing of the question presented in the present litigation.

### A. The Trust Instrument

The trust instrument, which is designated as an "Irrevocable Trust" was executed by the settlor, Frank M. Givens, on February 11, 1960 and was signed by a trust officer of the trustee on March 28, 1960.

The settlor placed certain scheduled securities in trust with the trustee with directions to hold in trust for a period of 99 years from the date of the instrument and to keep intact a block of some 12,352 shares of the common stock of Eastman Kodak Company, together with any shares of stock of the company received by reason of a stock split or stock dividends in excess of ten percent per annum. All stock dividends of Eastman Kodak of ten percent or less per annum were to be treated as income. The trustee was also directed to hold, manage, invest and reinvest any other securities, trust funds or property and increments thereof, in such securities as it might deem best. The trustee was also given broad power to sell and reinvest all of the other securities in the trust, except the Eastman Kodak stock.

The second paragraph of the trust instrument directed the trustee to pay the net income to the settlor during his life. Thereafter the net income was to be paid, "as same accrues" to the wife of the trustor to the extent of $10,000.00 per annum during her life; from the remaining net income the sum of $7500.00 per annum was to be paid to the brother of the settlor and, in the event of his death, to the wife of settlor's brother for her life. The trustee was further directed to pay from the remaining net income the sum of $5000.00 per annum to another sister-in-law of the settlor for her life. Specific directions were given by the settlor as to the order of priority of distribution of the net income among these life beneficiaries, in the event the net income were insufficient in any given year to make full payments to the life beneficiaries.

One of the critical provisions of the trust instrument is as follows:

". . . upon the decease of the last to survive of the said four life beneficiaries herein named, then, in that event, the Trustee shall continue to hold said Eastman Kodak Company stock and any other corpus and accrued income and shall designate the same 'The Frank A. and Margaret Frances Givens Memorial Fund', the net income from which fund shall be divided equally by said Trustee and paid to the following residuary beneficiaries, namely; one-third to the Trustees for The Temple, now located on Harding Road, Nashville, Tennessee; one-third to the Reverend William L. Adrian, Bishop of the Catholic Diocese, Nashville, Tennessee, or his successor in office, for the use and benefit of St. Mary's Orphanage, now located on White Bridge Road, Nashville, Tennessee; one-third to the Board of Control for the Masonic Widows and Orphans Home, Nashville, Tennessee."

The trust instrument further authorizes encroachment upon any part of the principal or corpus of the trust, other than the Eastman Kodak Company stock, in order to insure that each life beneficiary might be paid his specified annual income by the trustee.

Among the trust powers conferred upon the trustee was the following:

"1. To sell, pledge, mortgage, exchange and to convert from personalty to realty, and from realty to personalty, and reconvert and lease and rent out for any period of time, all or any portion of the property and holdings, from time to time, and at any time, held or acquired by the Trustee, in the corpus, or as accumulated income, of the trust estate . . ."

The trust instrument contains a "spendthrift" provision, which provides in part:

"3. Neither the corpus nor income of any trust in the hands of Trustee shall be subject to anticipation or assignment by any life beneficiary or the residuary beneficiaries, in any manner . . ."

### B. *The Previous Proceedings*

The opinion of the Court of Appeals, Middle Section, describes the trust instrument and the litigation which had been instituted in the Chancery Court of Davidson County, Tennessee by the widow of the settlor. The Court discussed in some detail the family background of the settlor and the circumstances under which the trust instrument was executed. It appears that the settlor had the advice of counsel and of trust officials and of an accountant, and that he consulted with them on several occasions prior to the execution of the instrument. It appears that although he was elderly and in poor health, he was mentally alert and attended to all of his business affairs. The provisions of the trust instrument, including the restrictions upon the sale of the Eastman Kodak Company stock, apparently were discussed with him on several occasions, and he received a number of recommendations that these provisions be deleted. In all instances, however, he rejected these suggestions. It further appears, from the opinion of the Court, that the settlor felt that his wife was not able to handle business affairs and that she had personal problems which led him to make the provisions for her above described. She apparently was quite dissatisfied with the terms and provisions of the trust instrument but was unable to dissuade her husband from executing it.

The Court of Appeals affirmed a judgment of the Chancellor to the effect that the settlor in executing the trust instrument had acted with the intent to deprive his wife of her marital share in his estate. He had executed his will simultaneously, but the bulk of his assets were disposed of in the inter vivos trust instrument. In the course of its opinion the Court of Appeals described the trust as providing a "well thought out plan" and it described the settlor as "an astute" businessman.

The Court of Appeals further held that the trust was in perpetuity for the charitable beneficiaries and stated:

"We think from a careful reading of the trust instrument several times that the ninety-nine year limitation applies only as to the sale and encroachment upon the Eastman Kodak stock. At the end of that term this stock may be sold by the Trustee and reinvested in other property. After the death of the last four life beneficiaries, the Trustee is directed to pay the net income of the trust equally between the three charitable beneficiaries."

Following the remand of the action from the Court of Appeals to the Chancery Court, a consent decree was entered into, executed by representatives of all of the parties, and a copy of the same is included as an exhibit to the stipulation before us. The decree recites that the parties had stipulated and agreed to a number of things, including the probate of the last

will and testament of the deceased, the administration of the estate, and the allocation to the wife of one-third of the net corpus and accumulated income of the trust estate, subject to certain credits and charges. Among the agreements contained in the consent decree is the following:

"8. The Defendant, Third National Bank, Trustee, shall at all times retain the corpus and accumulated income of the said Frank M. Givens Trust, except for the payment to the Complainant as set out in provision No. 4 hereof, except for such funds as it may be necessary to transfer to the Executrix of the Estate of Frank M. Givens for payment of the items enumerated in provision No. 5 hereof, and except for payment of the fees as set out in provision No. 11 hereof."

## C. *The Present Proceedings*

The present proceedings are before this Court on a petition filed on behalf of the charitable remaindermen, on March 2, 1972. This petition and the stipulation of the parties filed in the cause reflect that the settlor of the trust died within a few months after its establishment. As a result of the litigation brought by his widow, and the consent decree above referred to, the widow was awarded outright a portion of the corpus of the trust, and this was received by her in place and stead of her annual income from the trust estate. Accordingly the only income beneficiaries remaining are the brother of settlor, the brother's wife and another sister-in-law of the settlor. The brother and his wife have a right to $7500.00 per year income from the trust until the death of the survivor of them, and Mrs. Haun, sister-in-law of the settlor, has the right to $5000.00 per year until her death.

The petition alleges and the stipulation reflects that since the death of the settlor there has been "a dramatic increase" in the income from the trust estate. It was stipulated that at the time of the establishment

of the trust in 1960, the toal market value of the corpus was $1,341,000.00, of which $1,309,000.00 was represented by Eastman Kodak stock. The annual income from all of the securities in 1960 was $23,624.00. The total amount of income to be distributed by the trustee to all of the life beneficiaries, including settlor's wife, was $22,500.00, together with the trustee's fees.

It is stipulated that the income from the Eastman stock has increased greatly over the years, and the value of the stock itself has also increased. It was stipulated between the parties that for the fiscal year of the trust ended October 31, 1971 the trust had a total income of $44,450.35. After payment of the fees of the trustee and the distribution to the life beneficiaries, there was undistributed income in that year in the amount of $27,000.00. This was subject to federal income taxes of $9,559.35 and state income taxes of $2,266.00.

The stipulation reflects that for the year 1972 the income was even greater, and briefs filed by the parties are to the effect that there has been a continuing increase in the amount of annual income thrown off by the trust estate. Also, as of November 17, 1972, the trustee held some 30,000 shares of Eastman Kodak Company stock, having a market value of over $4,000,000.00. Various stock dividends or splits have occurred, and a detailed inventory of the portfolio was exhibited to the stipulation of the parties.

The petition filed by the charitable remaindermen alleges that since the creation of the trust by the settlor, various unexpected and unforeseeable events have occurred which were not in the contemplation of the settlor. Among these were the invalidation of a portion of the trust by the settlor's wife and the dramatic increase in trust income, which is being accumulated each year by the trustee. The petitioners allege that the undistributed income, after payment of the life beneficiaries and the fees of the trustee, is subject to federal and state income taxation in substantial

and steadily increasing amounts. It is alleged that there is thus an "erosion" of trust income which does not benefit the life beneficiaries and which at the same time is causing a detrimental effect upon the charitable remaindermen, since the taxes diminish the amount of corpus that will be available to them upon final distribution. The petitioners therefore seek to terminate the accumulation of undistributed income, and request that the surplus income each year, after adequate provision for the life tenants, be distributed to the charitable remaindermen. It is alleged that this will terminate the federal and state income taxation and thereby prevent erosion of the trust estate.

Answers to the petition were filed by the trustee and by the life beneficiaries. The life beneficiaries did not object to the proposed distribution, so long as they were adequately protected. The trustee, however, resisted the petition upon the ground that the distribution of the surplus income was not authorized by the trust instrument, and that the trustee had no authority to pay over any of the trust funds to the remaindermen until the death of the last named life beneficiary. The trustee quoted the spendthrift clause set out above and denied that the proposed distribution was authorized by the settlor or was in keeping with his intention.

The Chancellor filed a memorandum opinion pointing out the problem presented by the substantial taxation of the undistributed income and concluding that the present facts and circumstances upon which the petition was based presented situations which could not reasonably have been anticipated by the settlor. He accordingly granted the relief sought, and pursuant to his opinion a decree was entered directing the trustee to distribute the surplus income annually to the remaindermen, after making adequate and ample provisions for the security of the life tenants. The decree retained the cause in court, so that the distribution could be terminated upon further application to the Court, and the remaindermen were required to assume the burden of any taxation which might be levied upon their distributable annual share of income. They were required to indemnify the trustee and the life beneficiaries with respect to any such tax liability.

From this decree the trustee has appealed to this Court, assigning as error the action of the chancellor. It is the position of the trustee that the trust provisions are clear and unambiguous, and that they simply do not authorize the distribution of any surplus income over and above that necessary to meet the trust expenses and to make the annual payments to the life beneficiaries. The trustee further contends that the settlor, a businessman with a substantial estate, certainly was aware of income taxation, and the trustee denies that there has been any sufficient change in circumstances to justify the action taken below.

After careful consideration, this Court is constrained to agree with the position of the trustee in this case.

■ At the outset, this Court is impressed with the fact that there has already been a construction of this trust instrument in previous litigation, and an express holding of the Court of Appeals that the trustee will pay the net income of the trust to the charitable beneficiaries after the death of the four named life beneficiaries. A consent decree was entered into by all parties pursuant to that holding, expressly stating that at all times the trustee should retain the corpus and accumulated income except for certain payments to the widow of the settlor, and except for the payments to the other life beneficiaries. This Court has on more than one occasion pointed out the force and effect of a consent decree, and has held that when such a decree has been entered, and the time for seeking review has run out, the parties ordinarily cannot reopen matters determined in that decree. See Burton v. Burton, 208 Tenn.

11, 343 S.W.2d 867 (1961); Third National Bank v. Scribner, 212 Tenn. 400, 370 S. W.2d 482 (1963).

 We recognize, of course, the broad power of a court of equity to direct or permit a deviation from the terms of a trust where, due to circumstances not known to the settlor and not anticipated by him, compliance would substantially impair the accomplishment of the purposes of the trust. Henshaw v. Flenniken, 183 Tenn. 232, 191 S.W.2d 541 (1945); Weakley v. Barrow, 137 Tenn. 224, 192 S.W. 927 (1916). In those cases, however, the problem presented was the selling of assets for reinvestment, and not an anticipation or acceleration of remainder interests.

In the cases of Vines v. Vines, 143 Tenn. 517, 226 S.W. 1039 (1920) and Hill v. Hill, 159 Tenn. 27, 16 S.W.2d 27 (1929) this Court dealt with the attempted acceleration of remainder interests by renunciation or by deeds from the life tenants themselves. In both cases the Court held that the deeds of the life tenants were ineffective.

The present case presents most appealing circumstances, and there is no question of the good faith and proper intentions of all of the parties. The settlor in this case, however, did not make any provision for the distribution of the surplus income from the trust estate, prior to expiration of the life estates. The trust instrument at several points refers to accumulated or accrued income. We believe that an experienced businessman such as the settlor could have anticipated the existence of surplus net income remaining in the hands of the trustee and could have directed its distribution had this been his intention.

 While the Court recognizes that the burden of taxation is a legitimate consideration, the Court cannot hold as a matter of law that the payment of lawful federal and state income taxes amounts to a waste of trust assets or a frustration of the settlor's intentions. It appears that the settlor, in the conferences leading up to the execution of the trust instrument, was made acquainted with the various tax implications incident to such a transfer. He expressed clearly his intention that the charitable remaindermen were not to receive any income from this trust until the termination of the last of the designated life estates. The fact that the undistributed income is subject to taxation is, in our opinion, not an unforeseeable circumstance sufficient for us to justify a deviation from what we consider to be the clear and unambiguous terms of the trust instrument.

The assignment of error of the trustee is sustained. The judgment of the chancellor is reversed. The cause will be remanded to the trial court for the fixing of counsel fees. The costs of the cause may be paid from the trust estate.

FONES, C. J., and HENRY, COOPER and BROCK, JJ., concur.