220

CARR, EXR., *v.* STRADLEY, TRUSTEE, ET AL., APPELLEES; CANNING ET AL., APPELLANTS. CARR, EXR., *v.* STRADLEY, TRUSTEE, APPELLANT; THE COLUMBUS FOUNDATION ET AL., APPELLEES.

(Nos. 77-6 and 77-13—Decided December 28, 1977.)

222

Messrs. George, Greek, King, McMahon & McConnaughey, Mr. Edward F. Whipps and Mr. David C. Stradley, for Stradley, Trustee, et al.

Messrs. *Power, Jones & Schneider* and *Mr. William H. Schneider,* for Canning et al.

Messrs. *Porter, Wright, Morris & Arthur, Mr. Samuel H. Porter* and *Mr. Allan E. Roth,* for The Columbus Foundation.

*Mr. William J. Brown,* attorney general, and *Mr. Lawence D. Pratt,* for appellee Attorney General in cases Nos. 77-6 and 77-13.

### I.

CELEBREZZE, J. Appellants Canning and Hurst, testator's surviving sibling beneficiaries, argue in case No. 77-6, that the language of Item IV expresses the testamentary intent for the entire income to be distributed to them, with the monthly payments of $400 each being minimum amounts only. In the alternative, they contend that there is no provision in the will relative to the disposition of the excess income, and such excess income should therefore pass to the siblings as intestate property.

In reviewing will construction cases this court has repeatedly observed the well-settled general rules set forth in *Townsend's Exrs.* v. *Townsend* (1874), 25 Ohio St. 477. Paragraphs one, two and four of the syllabus in *Townsend* provide as follows:

"1. In the construction of a will, the sole purpose of the court should be to ascertain and carry out the intention of the testator.

"2. Such intention must be ascertained from the words contained in the will."

"4. All the parts of the will must be construed together, and effect, if possible, given to every word contained in it."

It is undisputed that the testator was a highly successful businessman and accountant. In a preceding item of his will he demonstrated that he was capable of creating a gift of income payable in specific minimum monthly installments, with a lump sum payment of the remaining

income to be disbursed on an annual basis.⁴ Unlike the prior item alluded to above, Item IV is totally devoid of any indication that the $400 monthly payments are merely minimum amounts.

Had the testator intended for his sisters and brother to take the entire income from the trust he certainly would have said so, in precise terms. We discern no ambiguity in the actual language of the will in regard to the amount of interest to be paid monthly to the life beneficiaries. Thus, we will not thwart the evident intent of the testator so that the appellants be benefitted.

Appellants also contend, alternatively, that since there is no specific provision in Item IV for the disposition of the controverted excess income, such excess amounts should pass to them, the decedent's surviving siblings, under the laws of intestate succession.

This argument runs contrary to another inveterate rule of will construction, which is set forth in the case of *Collier v. Collier's Exrs.* (1854), 3 Ohio St. 369, at page 373:

"It is a settled rule of construction, that a testator is never presumed to intend to die intestate as to any part of his estate to which his attention seems to have been directed; and a court of equity will put such a construction upon equivocal words as to prevent such a result." Accord,

---

⁴Item III reads, in pertinent part:

"Beginning at my death, the trustees shall pay to my wife, ALTA S. HURST, during her lifetime, the entire net income therefrom in minimum monthly installments of One Thousand Dollars ($1,000.00) each, the balance of any annual income over and above said monthly installments to be paid to her on February 1st of each and every year. If necessary, in order to make payment of the minimum monthly installments when due, the trustees are authorized to pay from principal such amount as to maintain such monthly installments at a minimum of One Thousand Dollars ($1,000.00)."

As noted above, Alta S. Hurst predeceased her husband. Pursuant to the direction of section (c), Item III, the trustees apparently added the entire principal of the marital trust to the residuary trust in Item IV. This fact may explain why testator, at the time of execution of the will, did not anticipate that the principal in the residuary trust would produce such a large amount of "excess income."

*McKelvey* v. *McKelvey* (1885), 43 Ohio St. 213; *Anderson* v. *Gibson* (1927), 116 Ohio St. 684.

It should be observed that Item IV, by its very terms, establishes a *residuary trust*, in which are named life beneficiaries and a charitable remainderman. In this item the testator devised and bequeathed "all the rest, residue and remainder" of his property to appellees-trustees, to hold in trust and to administer. He also provided that upon the termination of the rights of the life beneficiaries, the trustees are to hold the entire principal and accumulated income for the sole benefit of The Columbus Foundation. Although there was no specific reference made to the excess income, it is apparent that testator disposed of all remaining property in Item IV of his will. Accordingly, the excess income cannot pass to appellants under the laws of intestate succession.

We find that testator's intention was for each sibling to receive a monthly interest payment of $400, this being in addition to the $10,000 bequest to each set forth in Item II of the will. The judgment of the Court of Appeals is therefore affirmed in part as to case No. 77-6.

## II.

Trustee David C. Stradley, appellant in case No. 77-13, contends that where income derived from a testamentary trust estate is in excess of sums which the trustee is instructed to expend, there is, in the absence of any indication to the contrary, an implied direction by testator that such excess income shall be held in trust and accumulated. None of the parties to this appeal challenges the finding of the appellate court below that lapsed payments to deceased sibling Hazel Carr must be accumulated until the termination of payments to the last of the named life beneficiaries.

Appellant urges that it is logically absurd to suggest that testator would so carefully provide for accumulation of relatively insignificant amounts of income while intending current distributions, to the remainderman, of the much more significant excess income. Thus, appellant argues that

because the testator specified that the life beneficiaries receive only $400 per month, and because The Columbus Foundation's time of enjoyment comes into being only *upon the termination of* the last of the beneficiaries' rights, the inexorable conclusion to be drawn is that the "accumulated income," which the trustees are thereafter directed to hold for the benefit of the remainderman, encompasses *all income* collected by the trustees and not expended pursuant to the explicit instruction of Item IV.

As was remarked in the discussion above, the cardinal rule in the construction of any clause in a will is to ascertain the intention of the testator. If a court follows this rule strictly it will give effect only to the intention it finds expressed or implied in the instrument before it, thereby avoiding any tendency to redraft a provision in order to give effect to what it conceives to have been the actual intent of the testator, or its view of what the testator would have intended if he had thought of every contingency.

In view of the general scheme disclosed by Item IV, we adopt the construction proposed by appellant. In our opinion it is a rational interpretation of the probable intent of the testator, whereas the main thrust of the remainderman's argument centers about general socioeconomic concerns which are not reflected in the actual language employed by the testator.

We believe it unnecessary to examine at length other authorities which have expressed views on the particular issue before us, since we intend to give effect to the testator's intention which appears to be implicit in the clauses of Item IV. In this regard we pay particular attention to the following:

"An examination of the cases which have passed upon the question discloses the impracticability, if not the impossibility, of any attempt to lay down a set of hard and fast general rules which will apply under all circumstances. The statement made many years ago by Sir William Jones, and often quoted by the courts, 'no will has a brother,' might very well be extended to all instruments creating

228

trusts, whether testamentary or otherwise, and particularly to the provisions of such instruments relating to the disposition of surplus income. For this reason it has been said to be a primary principle of testamentary construction that in no branch of the law are precedents of less value * * * [citations omitted]. There are, however, certain general principles upon which the courts rely and by which they are guided in construing provisions as to surplus income.

"*Perhaps the most fundamental of these principles is that the intention of the creator of the trust is to be sought and given effect if it is not contrary to law.*" (Emphasis added.) Annotation, 157 A. L. R. 668, at page 669.

Certainly, appellees do not suggest that testator's intention is contrary to law. Quite conversely, the only two Ohio cases which have dealt with the controlling legal issue have applied the following general rule:

Unless a contrary intention appears in the will, where property is given in trust to manage, control and invest, it is necessarily implied that any income derived from the trust estate is a part of the trust fund, and if such income is in excess of the sums which the trustee is directed to pay out before the final termination of the trust, there is an implied direction that such excess income is to be held in the trust and accumulated until it can be paid out in accordance with the directions of the testator at the termination of the trust. See *Gunckel* v. *Gunckel* (1939), 29 Ohio Law Abs. 597, and *Lloyd* v. *Campbell* (1964), 120 Ohio App. 441.

In addition, when not disposed of by the terms of the trust, accumulation of income is an acceptable alternative, with such excess income being added to the principal to be distributed, on the death of the life beneficiary, to those who are then entitled to the principal. See 5 Scott on Trusts (3 Ed.) 3248, Section 412.1.

Finally, a recently decided case involving construction of a trust, *Givens* v. *Third National Bank* (Tenn. 1974), 516 S. W. 2d 356, is strikingly similar to the instant case

in its pertinent facts and legal issues. In that case, the settlor, apparently an astute businessman, placed certain securities in trust, with the income thereon to be paid, after the settlor's death, to four life beneficiaries in designated annual amounts. One critical provision of the trust instrument named three charitable remaindermen, and reads as follows:

"* * * upon the decease of the last to survive of the said four life beneficiaries herein named, then, in that event, the Trustee shall continue to hold said Eastman Kodak Company stock and any other corpus and accrued income and shall designate the same 'The Frank A. and Margaret Frances Givens Memorial Fund', the net income from which fund shall be divided equally by said Trustee and paid to * * * [the three charitable remaindermen]."

Subsequent to the settlor's death there was evidently a dramatic increase in the income from the trust estate, so that after the annual income payments to the life beneficiaries surplus income remained. The charitable remaindermen therefore filed a petition in the Chancery Court, alleging that the undistributed income, after payment of the life beneficiaries and the fees of the trustee, was subject to federal and state income taxation in substantial and steadily increasing amounts. They also urged that this erosion of the trust income did not benefit the life beneficiaries, but would detrimentally affect the remaindermen, since the taxes diminished the amount of corpus that would be available to them upon final distribution. Accordingly, the remaindermen sought to terminate accumulation of surplus income, and requested that each year, after adequate provision for the life beneficiaries, the undistributed income be paid to themselves, the remaindermen. The chancellor in the trial court granted the relief sought, concluding that the settlor could not reasonably have anticipated the significant increase in trust income.

On appeal to the Supreme Court of Tennessee the judgment of the chancellor was reversed, with the court making the following observations, at page 361:

"The present case presents most appealing circumstances, and there is no question of the good faith and proper intentions of all of the parties. The settlor in this case, however, did not make any provision for the distribution of the surplus income from the trust estate, prior to expiration of the life estates. The trust instrument at several points refers to accumulated or accrued income. We believe that an experienced businessman such as the settlor could have anticipated the existence of surplus net income remaining in the hands of the trustee and could have directed its distribution had this been his intention.

"* * * [The settlor] expressed clearly his intention that the charitable remaindermen were not to receive any income from this trust until the termination of the last of the designated life estates. The fact that the undistributed income is subject to taxation is, in our opinion, not an unforeseeable circumstance sufficient for us to justify a deviation from what we consider to be the clear and unambiguous terms of the trust instrument."

We conclude, similarly, that the testator in the instant cause did not intend for the charitable remainderman to receive any income from the trust until the termination of the last life estate[5].

The judgment of the Court of Appeals is hereby reversed in part, as to case No. 77-13.

*Judgment affirmed in part and reversed in part.*

W. BROWN, P. BROWN, SWEENEY and LOCHER, JJ., concur.

O'NEILL, C. J., and HERBERT, J., concur in paragraphs one and two of the syllabus and the judgment in case No. 77-6, but dissent from the judgment in case No. 77-13.

---

[5] We note that whereas in *Givens* the corpus available for final distribution was steadily decreasing, the surplus income in the present case is being added to the principal, to be invested and, presumably, aggrandized.