SHRINERS' HOSPITAL FOR CRIPPLED CHILDREN, APPELLEE, v. HESTER, EXECUTOR, ET AL., APPELLEES; LaFOLLETTE ET AL., APPELLANTS.

[Cite as Shriners' Hospital for Crippled Children v. Hester (1986), 23 Ohio St. 3d 198.]

(No. 85-743—Decided April 30, 1986.)

*Pickrel, Schaeffer & Ebeling* and *Andrew C. Storar,* for appellees Shriners' Hospital for Crippled Children and Twin Wells Indian School.

*Carl Morgenstern Co., L.P.A., Carl Morgenstern* and *Roger S. Gates,* for appellants Aubrey P. LaFollette et al.

*Millikin & Fitton* and *James E. Michael,* for appellee Stephen M. Hester, executor.

*Anthony J. Celebrezze, Jr.,* attorney general, *Richard W. Ross* and *Susan E. Gurwin,* for appellee Anthony J. Celebrezze, Jr., attorney general.

SWEENEY, J. Ohio's mortmain statute, former R.C. 2107.06,[1] provided in relevant part:

"(A)  If a testator dies leaving issue and by his will devises or bequeaths his estate, or any part thereof, in trust or otherwise to any * * * person, association, or corporation for the use or benefit of one or more benevolent, religious, educational, or charitable purposes, such devises and bequests shall be valid in their entirety only if the testator's will was executed more than six months prior to the death of the testator. If such will was executed within six months of the testator's death, such devises and bequests shall be valid to the extent they do not in the aggregate exceed twenty-five per cent of the value of the testator's net probate estate, and in the event the aggregate of the devises and bequests exceeds twenty-five per cent thereof, such devises and bequests shall be abated proportionately so that the aggregate thereof equals twenty-five per cent of the value of the testator's net probate estate.

"* * *

"(C)  The portion of any such devises and bequests which is invalid under this section shall be distributed per stirpes among such testator's issue * * *."

It is undisputed that four of the beneficiaries under Myrtle Davis' last will — the Salvation Army, Fairfield Church of God, Shriners' Hospital for Crippled Children, and Twin Wells Indian School — are organized for "benevolent, religious, educational, or charitable" purposes within the meaning of former R.C. 2107.06; and, the record indicates that the assets of Davis' estate are sufficient, after payment of all debts and expenses of administration, to pay these beneficiaries more than twenty-five percent of the net probate estate. By operation of R.C. 2107.06, the bequests to

---

[1] R.C. 2107.06 was repealed in its entirety effective August 1, 1985.

these beneficiaries (especially the residual bequests to Shriners and Twin Wells Indian School) would be substantially reduced, and Davis' grandchildren, who were not named as beneficiaries in her will but who are her heirs-at-law pursuant to R.C. 2107.06(C), would receive a substantial portion of her estate.

The appellees, Shriners, Hester and Twin Wells Indian School, contend that former R.C. 2107.06 should not be applied to Davis' last will, because application of the statute would alter Davis' will in a manner that is contrary to her wishes and would unreasonably deprive certain of her intended beneficiaries of the gifts to which they would otherwise be entitled. Shriners urges the court either to adopt the doctrine of dependent relative revocation (in order that Davis' revoked will of January 31, 1980 can be given effect), or to hold that former R.C. 2107.06 is violative of the Equal Protection and Free Exercise Clauses of the Ohio and United States Constitutions.

Focusing, first, on Shriners' challenge to the constitutionality of former R.C. 2107.06, we look to the purpose of the statute. Modern mortmain statutes[2] are directed toward the testator who executes his will under the belief that his death is near. Generally, the purpose of these statutes has been to prevent such a testator from disposing of his estate, as a result of unsound judgment or undue influence, in a manner that is prejudicial to his next of kin. Because it was felt that certain individuals and organizations were in a position to benefit from the execution of a will by a "death-bed" testator, bequests to these individuals and organizations have been singled out in mortmain statutes as being invalid, either in whole or in part. Under former R.C. 2107.06, bequests made for governmental, benevolent, religious, educational or charitable purposes were deemed invalid insofar as their value exceeded twenty-five percent of the value of the testator's net probative estate.

Traditional scrutiny of R.C. 2107.06 for purposes of equal protection analysis requires a determination as to whether the statute is rationally related to the accomplishment of a legitimate state objective. *McGowan* v. *Maryland* (1961), 366 U.S. 420 [17 O.O.2d 151]; *Bd. of Edn.* v. *Walter* (1979), 58 Ohio St. 2d 368 [12 O.O.3d 327]; *Kinney* v. *Kaiser Aluminum & Chemical Corp.* (1975), 41 Ohio St. 2d 120 [70 O.O.2d 206]. We believe that the protection of a testator's issue from disinheritance, as a result of the testator's unsound judgment or the undue influence of third parties upon the testator, is a legitimate state objective. Our analysis narrows, therefore, to the question of whether R.C. 2107.06 is rationally related to the accomplishment of that objective.

It is apparent that R.C. 2107.06 will accomplish its objective in some

---

[2] Mortmain originally came into being as a means of preventing the acquisition of vast amounts of real property by religious orders, which would be inclined to hold such property in perpetuity, under a "dead hand," thereby preventing the economic and efficient use of land.

cases — *i.e.*, those in which the testator, having acted under the belief that his death was near, executed a will within the six months prior to his death, making bequests therein for governmental, benevolent, religious, educational or charitable purposes on the basis of unsound judgment or as the result of undue influence. Unfortunately, a large number of cases falling within the scope of R.C. 2107.06 involve the estates of testators who did *not* execute their last will under the belief that their death was near. Furthermore, out of the remaining cases impacted by the statute in which the testator did believe that he was near death, it is reasonable to assume that few involved bequests that were based upon unsound judgment or the result of undue influence by a governmental, benevolent, religious, educational or charitable beneficiary.

Thus, by operation of R.C. 2107.06, a select class of beneficiaries is deprived of testamentary bequests, even though in the vast majority of cases such bequests are entirely legitimate and not within the scope of the statute's objective. Additionally, R.C. 2107.06 effectively creates an irrebuttable presumption that a testator, who made substantial "charitable" bequests in a will that was executed within six months prior to his death, acted with unsound judgment or under undue influence. Such " 'irrebuttable presumptions have long been disfavored under the Due Process Clauses of the Fifth and Fourteenth Amendments,' expecially when they are 'not necessarily or universally true in fact, and when the state has reasonable alternative means of making the crucial determination.' " *Hall* v. *Rosen* (1977), 50 Ohio St. 2d 135, at 142 [4 O.O.3d 336] (Justice William B. Brown, dissenting, quoting *Vlandis* v. *Kline* [1973], 412 U.S. 411, 446 and 452). Although Shriners has not directly challenged the validity of R.C. 2107.06 on due process grounds, the creation of the aforementioned irrebuttable presumption, in spite of the existence of "reasonable alternative means" for determining whether the testator acted with unsound judgment or under undue influence,[3] evinces a lack of rationality in the operation of the statute.

Additional evidence of the unreasonable character of R.C. 2107.06 is found in the requirement that charitable bequests in excess of twenty-five percent of the value of the testator's net probate estate be "distributed per stirpes among such testator's issue." In the instant case, the trial court found that Davis' issue — her grandchildren — were, "from a practical standpoint, * * * strangers to the testatrix." The statute thus operates to invalidate legitimate gifts to worthy organizations solely for the benefit of persons who were neither dependent upon nor closely involved with the life of the testatrix. When Ohio's first mortmain statute was enacted in the nineteenth century, families were usually supported by

---

[3] R.C. 2107.71 *et seq.* provide for a will contest in which the complaining party may show that the testator, pursuant to R.C. 2107.02, lacked the requisite mental capacity or was under restraint at the time of the execution of his will.

a single head of household, life insurance was not commonplace, and social welfare programs were, for the most part, non-existent. The original mortmain statute thus expressed, in part, a legitimate concern for the financial well-being of a testator's dependents. Societal changes that have reduced the bases for this concern have also reduced the need to provide a testator's issue with an inheritance through mortmain.

The imprecise nature of R.C. 2107.06 is further borne out by its failure to address *inter-vivos* death-bed transfers that are made to the prejudice of the grantor's issue and bequests made by terminally ill testators *more* than six months before their death. Additionally, the statute's invalidation of bequests for governmental, benevolent, religious, educational and charitable purposes appears grossly unfair in view of its failure to address bequests, which are not designated for any of the foregoing purposes, to persons such as clergymen, physicians, attorneys and nurses. Persons in these positions are often in a position to influence the death-bed testator; and, bequests to such persons in their individual capacities lack the "facial legitimacy" of bequests that are expressly designated for "charitable" purposes.

Based upon all of the foregoing, we cannot conclude that former R.C. 2107.06 is *rationally related* to the accomplishment of a legitimate state objective. The legislature apparently reached a similar conclusion when it repealed R.C. 2107.06 effective August 1, 1985. Although this court upheld the constitutionality of a predecessor to R.C. 2107.06 in *Patton* v. *Patton* (1883), 39 Ohio St. 590, it did so by rejecting a challenge to the statute that was based upon the First Amendment right to acquire, possess and protect one's property.[4] Until today, this court has not scrutinized Ohio's mortmain statute by application of a modern, equal protection analysis. We hold that R.C. 2107.06 does not withstand such scrutiny.

According to the brief of the appellee Attorney General, only four states "currently have valid mortmain statutes."[5] The demise of mortmain has been brought about both by legislative repeal and judicial decision. See, *e.g., In re Estate of Kinyon* (Mont. 1980), 615 P. 2d 74; *In re Estate of Cavill* (1974), 459 Pa. 411, 329 A. 2d 503; *Estate of French* (D.C. App. 1976), 365 A. 2d 621. Ohio's Legislature has repealed this state's mortmain statute effective August 1, 1985; and, we hold that former R.C. 2107.06, as applied to any action seeking construction of that statute pending on the date of this decision or to the last will of any testator

---

[4] The court held that "the inalienable rights here declared [of 'acquiring, possessing and protecting property'], * * * are possessed by living, not by dead men." *Patton* v. *Patton, supra,* at 597.

[5] Fla. Stat. Ann. Section 732.803 (West Supp. 1986); Ga. Code Ann. Section 113-107 (Supp. 1985); Idaho Code Section 15-2-615 (1979); Miss. Code Ann. Section 91-5-31 (1972).

whose death occurred on or after August 1, 1985, is violative of the Equal Protection Clauses of the Ohio and United States Constitutions.

Based upon this holding we decline to address Shriners' challenge to R.C. 2107.06 under the Free Exercise Clauses of the Ohio and United States Constitutions. We also decline to adopt or address the doctrine of dependent relative revocation.[6] While this doctrine may have merit, we believe it would be unwise to adopt a doctrine, potentially having application in a variety of cases that are not before us, solely to remedy the injustice of the instant case, which was wrought by an unreasonable statute that lacks the requisite degree of rationality to withstand constitutional scrutiny.

Accordingly, the judgment of the court of appeals is affirmed, but for the reasons stated herein, and the cause is remanded to the trial court for further proceedings.

*Judgment affirmed
and cause remanded.*

CELEBREZZE, C.J, LOCHER, HOLMES, C. BROWN, DOUGLAS and WRIGHT, JJ., concur.

---

[6] The court of appeals remanded this cause to the trial court for application of the doctrine of dependent relative revocation, which would allow the religious, educational, and charitable bequests in Davis' revoked will of January 31, 1980 to be revived. "Under * * * [this] doctrine * * *, an earlier will, revoked only to give effect to a later one on the supposition that the later one will become effective, remains in effect to the extent that the later proves ineffective." *Estate of Kaufman* (1945), 25 Cal. 2d 854, 858-859, 155 P. 2d 831, 833.