[This opinion has been published in *Ohio Official Reports* at 69 Ohio St.3d 74.]

WENDELL ET AL., APPELLEES, *v.* AMERITRUST COMPANY, N.A., F.K.A.

CLEVELAND TRUST COMPANY; AMERICAN BIBLE SOCIETY ET AL.,

APPELLANTS.

[Cite as *Wendell v. AmeriTrust Co., N.A.*, 1994-Ohio-511.]

*Probate—Wills—Mortmain statute viable rule of law at time of testator's death—*
*Effect on residuary provisions of testator's will when statute declared*
*unconstitutional.*

(No. 92-1980—Submitted October 12, 1993—Decided April 20, 1994.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 59834.

————————————

{¶ 1} Plaintiffs-appellees, Glenn H. and Clyde Wendell, grandsons of Harry F. Wendell, instituted a declaratory judgment action seeking to have certain testamentary bequests of their grandfather set aside as violative of Ohio's mortmain statute as it existed at the time of the testator's death. Named as defendants were AmeriTrust Company, N.A., in its capacity as trustee, the American Bible Society, the Board of National Missions of the United Presbyterian Church in the United States, Inc., and the state's Attorney General. Clara Weber Wendell, the testator's daughter-in-law, and the estate of Francis D. Wendell were later joined as defendants.

{¶ 2} On February 23, 1942, Harry F. Wendell executed his last will and testament in which he created a trust that provided income to his wife during her lifetime and then to his only son, Francis D. Wendell, during his life. The trust provided for a residuary estate upon the death of Francis. The trust principal remaining at that time, to the extent that it did not exceed $70,000, was to be administered in equal parts for the benefit of the testator's grandsons. Plaintiffs were entitled to their respective shares of the principal upon attaining the age of

thirty-five. The balance of the trust residue was to be distributed to the defendant charities.

{¶ 3} Harry Wendell died on May 21, 1942, less than three months after the execution of the will. According to plaintiffs, Laura Wendell, his wife, died in 1953, and Francis died in 1986. Upon receiving their distributive share, plaintiffs instituted suit contending that G.C. 10504-5 rendered the testator's charitable gifts void. The trial court held that G.C. 10504-5, Ohio's mortmain statute in effect at the time of the will's execution and at the testator's death, was unconstitutional and applied its decision retroactively to validate the bequest to the charities.

{¶ 4} On appeal, the court of appeals affirmed the trial court's finding of unconstitutionality but reversed its retroactivity ruling. The court of appeals, applying *Chevron Oil Co. v. Huson* (1971), 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296, concluded that the decision should be given prospective effect only. In so doing, the court of appeals held the charitable gifts to be void and ordered the remainder of the trust to be distributed according to the statutes of descent and distribution.

{¶ 5} The cause is now before this court upon the allowance of a motion to certify the record.

_____

*Greene & Tulley* and *Joseph P. Tulley*, for appellees.

*Buckley, King & Bluso* and *John A. Hallbauer*, for appellee Society National Bank, f.k.a. AmeriTrust Co., N.A.

*Schneider, Smeltz, Ranney & LaFond*, *John S. Chapman* and *Jonathan L. Stark*, for appellants American Bible Society and Board of National Missions of the United Presbyterian Church in the United States, Inc.

_____

**MOYER, C.J.**

{¶ 6} The issue presented is whether the residuary provisions of the testator's will are governed by the law as it existed at the time of the execution of the will or whether a subsequent judicial ruling of unconstitutionality should render G.C. 10504-5 void *ab initio*.

{¶ 7} At the time of the execution of the will, G.C. 10504-5 provided: "If a testator dies leaving issue of his body, or an adopted child, living, or the lineal descendants of either, and the will of such testator gives, devises or bequeaths the estate of such testator, or any part thereof, to a benevolent, religious, educational or charitable purpose, *** such will as to such gift, devise or bequest, shall be invalid unless it was executed according to law, at least one year prior to the death of the testator." 114 Ohio Laws 346.

{¶ 8} In 1953, G.C. 10504-5 was renumbered R.C. 2107.06, with minor amendments. In 1965, the General Assembly substantially amended R.C. 2107.06. 131 Ohio Laws 617. The amended statute provided that charitable bequests executed more than six months before a testator's death were valid, and if executed within six months of the testator's death, those bequests were invalid only to the extent that they exceeded twenty-five percent of the testator's net probate estate. The General Assembly repealed R.C. 2107.06 effective August 1, 1985. 141 Ohio Laws, Part I, 1232. In 1986, this court declared former R.C. 2107.06 to be unconstitutional in *Shriners' Hosp. for Crippled Children v. Hester* (1986), 23 Ohio St.3d 198, 23 OBR 359, 492 N.E.2d 153. As such, G.C. 10504-5 remained in effect and was not amended between the execution of Harry Wendell's will and his death three months later. Thus, with regard to G.C. 10504-5, it is immaterial whether we consider the will as speaking from the date of execution or the date of the testator's death.

{¶ 9} We have consistently held that a court's overriding concern when interpreting a testamentary document must be to ascertain and give effect to the

testator's intent if it be legally possible. *Townsend's Exrs. v. Townsend* (1874), 25 Ohio St. 477, paragraph one of the syllabus. To aid in determining intent, the document must be read in view of the law as it existed at the time it was executed with the presumption that the testator was knowledgeable of the law. *Cent. Trust Co. of N. Ohio, N.A. v. Smith* (1990), 50 Ohio St.3d 133, 553 N.E.2d 265; *Flynn v. Bredbeck* (1946), 147 Ohio St. 49, 33 O.O. 243, 68 N.E.2d 75, paragraph one of the syllabus. We have held that, when determining whether a settlor intended adopted children to be included in a designated class of beneficiaries created by an inter vivos trust, the law in effect at the time the trust was created should be applied to effectuate the intent of the settlor. *Ohio Citizens Bank v. Mills* (1989), 45 Ohio St.3d 153, 543 N.E.2d 1206, paragraph two of the syllabus. More specifically, after declaring Ohio's mortmain statute unconstitutional in *Shriners' Hosp. for Crippled Children v. Hester*, at syllabus, we expressly gave our decision prospective application only. Generally, it has been the policy of this court to apply the law in effect at the time of the execution of the will when interpreting testamentary documents since that law typically frames the intent of the testator.

{¶ 10} Nine years following the execution of Wendell's will, we reaffirmed that gifts to charities made within one year of the testator's death were void under G.C. 10504-5. *Kirkbride v. Hickok* (1951), 155 Ohio St. 293, 44 O.O. 297, 98 N.E.2d 815. Therefore, on the day the will was executed and on the day of Wendell's death, the mortmain statute was a viable rule of law. We must presume that the testator's intent was formed with the knowledge that his charitable gifts might lapse. Further evidence of intent comes from the testator's inclusion of two classes of residuary legatees. It is reasonable to assume that the testator, fearing his charitable gifts might be rendered void, included the second residuary class in part to protect against intestate succession. This distribution scheme was subsequently recognized by this court in *Commerce Natl. Bank of Toledo v. Browning* (1952), 158 Ohio St. 54, 48 O.O. 28, 107 N.E.2d 120. Finally, we observe that the specific

sum that was bequeathed for the benefit of plaintiffs, $70,000, was very near the original corpus amount of approximately $84,000. The testator, shortly before his death, had witnessed the most economically depressed period of our nation's history. The 1930s represented an era where investment gains were typically at a minimum. While Wendell may have hoped this to be a one-time phenomenon, his recent experience had been that his trust might not grow at a rate much greater than that necessary to meet the needs of his wife and son and permit a $70,000 distribution to his grandchildren. The amounts involved at the time of the execution of the will strongly evidence an intent that the bulk of his estate should remain in his family with a much lesser amount being distributed to the charities.

{¶ 11} In light of the foregoing, we presume that Wendell was aware of the potential effect of the mortmain statute and that it was his intention to bequeath the bulk of his estate to his family. Having determined the overriding issue of intent, we now consider whether the law will permit satisfaction of this intent.

{¶ 12} In *Peerless Elec. Co. v. Bowers* (1955), 164 Ohio St. 209, 57 O.O. 411, 129 N.E.2d 467, we held that, generally, a decision of this court overruling a previous decision is to be applied retrospectively with an exception for contractual or vested rights that have arisen under the previous decision. This reasoning applies with similar force when the court's decision strikes down a statute as unconstitutional. Ohio's mortmain statute was repealed by the General Assembly, and declared unconstitutional by judicial decision. *Shriners' Hosp. for Crippled Children v. Hester*, *supra*. The issue created is whether the plaintiffs' rights to distribution vested prior to the decision declaring the mortmain statute unconstitutional, hence satisfying the exception stated in *Peerless*.

{¶ 13} In paragraph two of the syllabus of *Ohio Natl. Bank of Columbus v. Boone* (1942), 139 Ohio St. 361, 22 O.O. 414, 40 N.E.2d 149, we held that:

"The law favors the vesting of estates at the earliest possible moment, and a remainder after a life estate vests in the remainderman at the death of the testator,

in the absence of a clearly expressed intention to postpone the vesting to some future time."

{¶ 14} Generally, if a present bequest is made and only distribution is delayed until some date in the future, the beneficiary's interest will vest at the death of the testator subject to possible additions to the class. *Cent. Trust Co. of N. Ohio, N.A. v. Smith*, *supra*, 50 Ohio St.3d at 138, 553 N.E.2d at 271; *Wiley v. Bricker* (1900), 21 Ohio C.C. 109, 11 Ohio C.D. 429. Testator Wendell made a specific residuary bequest to the lawful children of his son, thereby creating a class of beneficiaries consisting of plaintiffs, the children of his son. Plaintiffs' interest vested at the time of the testator's death; merely the enjoyment of the bequest was delayed. Plaintiffs' interest vested prior to the acts of both the General Assembly and this court invalidating the mortmain statute and, therefore, fall within the exception to retroactivity. Thus, the bequest to the appellant charities remains void.

{¶ 15} The final question to be addressed is whether the court of appeals properly ordered distribution of the balance of the trust according to the laws of descent and distribution. We begin with the general propositions that the law abhors intestate succession and that every reasonable effort will be made to avoid such a result where possible. *Carr v. Stradley* (1977), 52 Ohio St.2d 220, 6 O.O.3d 469, 371 N.E.2d 540; *Anderson v. Gibson* (1927), 116 Ohio St. 684, 691, 157 N.E. 377, 379.

{¶ 16} This court has previously held that "[w]here a will contains general residuary provisions for disposition of any and all of the testator's property not disposed of by other provisions of the will, if a bequest or devise of a part of the residue lapses or is otherwise ineffective, that part of the residue *** will ordinarily pass under such residuary provisions of the will to any other parties entitled thereunder to portions of the residue, instead of passing as intestate property." *Commerce Natl. Bank of Toledo v. Browning*, *supra*, syllabus.

{¶ 17} In *Browning*, the testator divided his residuary estate into one hundred equal shares. Five shares were to be held in trust for the benefit of his son Roy during his life, then to Roy's widow during her life (with certain conditions) and then to Roy's children. However, the testator's son died childless and, hence, the trust ultimately failed for want of beneficiaries. Rejecting the English common-law rule that favored intestate succession, this court adopted the rule stated above and ordered the five shares distributed *pro rata* to the remaining residuary beneficiaries.

{¶ 18} A similar situation is presented herein. The result of the law in effect at the time of the execution of the will renders void his bequest to the charities. Hence, a resulting trust arises which must be distributed to the remaining residuary beneficiaries, *i.e.*, plaintiffs, under the law of *Browning*. By executing a will, the testator manifested his intent to die testate. Ordering distribution under the statutes of descent and distribution would thwart that intent.

{¶ 19} For the foregoing reasons, the judgment of the court of appeals is affirmed to the extent that it applied the law in effect at the time of the will's execution, and reversed to the extent that it ordered distribution of the lapsed bequest pursuant to the statutes of descent and distribution. This cause is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment affirmed in part,*
*reversed in part,*
*and cause remanded.*

A.W. SWEENEY, WRIGHT, RESNICK, GREY and PFEIFER, JJ., concur.

DOUGLAS, J., concurs in judgment only.

LAWRENCE GREY, J., of the Fourth Appellate District, sitting for F.E. SWEENEY, J.

_____