OPINION
{¶ 1} This is an appeal from a judgment of the probate court in a testamentary trust dispute. The court applied the doctrine of deviation and awarded the share of trust income of a now defunct beneficiary hospital to two remaining hospitals who also are beneficiaries under the trust. This appeal is brought by the residual beneficiaries of the will, who ask us to find that the probate court erred in applying the doctrine of deviation. We find no error and, accordingly, will overrule their assignments of error and affirm the judgment of the probate court.
 {¶ 2} On July 20, 1955, Nathan Sanders executed a will that established two testamentary trusts upon his death. The two trusts, termed Trust A and Trust B, were bequeathed equal shares of the remainder of Sanders' estate after other bequests were satisfied.
 {¶ 3} Trust A provided that Sanders' wife was to receive income generated by the trust for her life. Upon his wife's death, the corpus of Trust A was to be divided between Sanders' siblings, their issue to take per stirpes.
 {¶ 4} Likewise, Trust B provided that Sanders' wife receive the income from the trust for her life. But, upon his wife's death, the remainder of the trust was to be divided into three equal parts. One part was to be distributed outright to the United Jewish Appeal. The other two parts were to be held in a perpetual trust. The annual income from that trust was to be divided among three Dayton area hospitals for the establishment of a "Harriet and Nathan Sanders Memorial Fund" at each hospital. According to Sanders' will, Good Samaritan Hospital was to receive 40% of the annual income from the trust, Miami Valley Hospital, 30% and St. Elizabeth, 30%. Sanders' will provides that the income they received was "to be used by the trustees of said hospitals as they deem best."
 {¶ 5} Sanders died on December 16, 1955. Trusts A and B were not funded because Sanders' wife elected to take against his will. The remainder of Sanders' estate passed according to his will. As a result, Sanders' siblings and the United Jewish Appeal received their respective shares outright. Sanders' gifts to the three hospitals for the establishment of the respective memorial funds vested in trust. The original trustee was Winters National Bank. Its successor, and the current trustee, is Plaintiff-Appellee, Bank One Trust Company ("Bank One").
 {¶ 6} In 2002, Franciscan Health System of the Ohio Valley ("Franciscan") formerly St. Elizabeth Hospital, informed the trustee that it had ceased operating its hospital in Dayton and that it waived any benefits it was due under the trust as of January 1, 2002. Since then, the trustee has held Franciscan's share of the trust's income in escrow pending a determination of its proper distribution. The trustee also commenced the underlying action in the probate court, seeking a declaratory judgment as to the proper disposition of the 30% annual share of the trust income which Sanders' will directed be given by the trustee to St. Elizabeth, now Franciscan.
 {¶ 7} Sanders' heirs, his nephew, great nieces and great nephews, who were made parties, argued that the residuary clause of Sanders' will entitled them to Franciscan's share of the trust income. Good Samaritan Hospital and the Miami Valley Hospital argued that Franciscan's share should be divided between them, pro rata. The Ohio Attorney General made an appearance in support of the hospital's argument.
 {¶ 8} Motions for summary judgment were filed by the trustee, Bank One, by Franciscan, by the Good Samaritan and Miami Valley hospitals, and by Sanders' heirs. The trial court entered a decision ordering that Franciscan's share be divided equally between Good Samaritan and Miami Valley hospitals.
 {¶ 9} Sanders' heirs now appeal, presenting three assignments of error.
 FIRST ASSIGNMENT OF ERROR {¶ 10} "The Trial Court Erred When It Failed To Find As A Matter Of Law That The Shares Of The Failed Testamentary Bequest Should Be Distributed Under The Residuary Clause Of The Will Rather Than To The Other Hospitals."
 {¶ 11} The probate court applied the doctrine of deviation in reaching its decision. Under that doctrine, a court can "direct or permit a deviation from the terms of the trust where compliance is impossible or illegal, or where owing to circumstances not known to the settlor and not anticipated by him compliance would defeat or substantially impair the accomplishment of the purposes of the trust." Daloia v. Franciscan HealthSys. of Cent. Ohio, Inc. (1997), 79 Ohio St.3d 98, 106-108 (quoting Scott, Law of Trusts, at Section 381, p. 323). Further, using the doctrine of deviation, a "court may modify an administrative or distributive provision of a trust, or direct or permit the trustee to deviate from an administrative or distributive provision, if because of circumstances not anticipated by the settlor, the modification or deviation will further the purposes of the trust." Restatement on Trusts 3d, Section 66, p. 492.
 {¶ 12} The doctrine of deviation is applicable to both private and charitable trusts, and it is concerned solely with the administration of the trust. Daloia, supra at 106. "The administration of a trust involves the methods of accomplishing the purposes of the trust." Id. Therefore, when applying the doctrine of deviation, a court cannot change the original charitable objective of the testator or divert the bequest to an entity with a charitable purpose different from the purpose set forth in the trust instrument. Id.
 {¶ 13} "In ordering a deviation a court of equity is merely exercising its general power over the administration of trusts; it is an essential element of equity jurisdiction. In ordering a deviation the court does not touch the question of the purpose or object of the trust, nor vary the class of beneficiaries, nor divert the fund from the charitable purpose designated." Daloia, supra at 107 (quoting Craft v.Shroyer (1947), 81 Ohio App. 253, 272-273).
 {¶ 14} Sanders' heirs argue that the trial court erred in applying the doctrine of deviation because there is no language in Sanders' will or trust that demonstrates a general charitable intent. Additionally, they argue that as the will contains no language specifically identifying the purpose of the trust as charitable, or any purpose at all, the will must be read to find that Sanders intended the named hospitals to benefit individually and not as members of a class. Therefore, they argue, because Franciscan has ceased operations, the overall purpose of Sanders will can be satisfied only by distributing the share his will directed be given to Franciscan to Sanders' heirs under the residuary clause of his will.
 {¶ 15} Franciscan's cessation of operations makes it impossible for the trustee to comply with the express terms of the testamentary trust in Sanders' will to the extent that it creates a benefit for Franciscan's predecessor, St. Elizabeth. It is most unlikely that when Sanders executed his will in 1955 he anticipated that any of the three area hospitals he designated as beneficiaries of his trust would cease operations. The question is whether the modification the probate court ordered is inconsistent with the purpose or object of the trust, benefitted a different class of institution, or diverted the funds from the charitable purpose Sanders had designated.
 {¶ 16} Sanders' will authorizes the trustees of the respective beneficiary hospitals to use the proceeds each receives from his trust "as they deem best." This does not designate a purpose. However, "it is well settled that the promotion of health is a charitable purpose."Scott, section 368, p. 130. That precept creates a presumption that weighs in favor of dividing Franciscan's share between the two remaining hospitals that were identified by Sanders in his will, which must use it for the same charitable ends, and against dividing that share or the portion of the corpus of the trust from which it is produced among the heirs, whose objects and purposes are only private gain.
 {¶ 17} The result the probate court reached benefits the same class of institution that Sanders benefitted in his will. Both Good Samaritan and Miami Valley are general hospitals that serve the greater Dayton community. Both were, as was St. Elizabeth, Franciscan's predecessor, made beneficiaries of proceeds from the same trust corpus by Sanders' will. Further, both were, as was St. Elizabeth, directed to create a "Harriet and Nathan Sanders Memorial Fund" to accept and manage the funds each receives from the trustee. No claim is made that the remaining two hospitals failed to do that, and no suggestion is made that the additional amounts each now will receive from Franciscan's share will not go to the two hospital's respective Harriet and Nathan Sanders Memorial Fund, consistent with Nathan Sanders' intent.
 {¶ 18} Finally, and for the same reasons discussed above, the probate court's order does not divert the funds it divides from the charitable purposes Sanders designated. Rather, it directs the funds to purposes and beneficiaries he did designate, Miami Valley Hospital and Good Samaritan Hospital. We reject the heirs' contention that in this circumstance Sanders, who was a major benefactor of Jewish causes, would have wished Franciscan's share of the trust proceeds instead to go to the United Jewish Appeal. Sanders made a specific provision in his will for that organization, and there is no reason to find that if given the funds the United Jewish Appeal would use them for the purposes for which St. Elizabeth would have used them. It is more likely that other kinds of charitable purposes might be served. In any event, the United Jewish Appeal has not pressed any claim for the funds concerned.
 {¶ 19} We find that the probate court correctly applied the doctrine of deviation on the record before it. The first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR {¶ 20} "The Trial Court Erred In Failing To Find The Existence Of Genuine Issues Of Material Fact Regarding Mr. Sanders' General Charitable Intent."
 {¶ 21} Summary judgment may not be granted unless the entire record demonstrates that there is no genuine issue of material fact and that the moving party is, on that record, entitled to judgment as a matter of law. Civ.R. 56. The burden of showing that no genuine issue of material fact exists is on the moving party. Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64.
 {¶ 22} All evidence submitted in connection with a motion for summary judgment must be construed most strongly in favor of the party against whom the motion is made. Morris v. First National Bank Trust Co. (1970), 21 Ohio St.2d 25. "Because a trial court's determination of summary judgment concerns a question of law, we apply the same standard as the trial court in our review of its disposition of the motion; in other words, our review is de novo." Am. States Ins. Co.v. Guillermin (1996), 108 Ohio App.3d 547, 552.
 {¶ 23} Sanders' heirs argue that a genuine issue of material fact remains as to Sanders' intent when he formed the trusts benefitting the three hospitals. They argue that the trial court failed to make a finding that Sanders intended to benefit local hospitals generally, rather than the named hospitals specifically and individually.
 {¶ 24} This assignment of error raises issues that were implicit in the first assignment, and which are resolved by our decision overruling the first assignment. Nevertheless, because they are here argued separately, we will address those issues in greater detail.
 {¶ 25} During oral arguments, Sanders' heirs argued that the doctrine of deviation applies only to private trusts and cannot be used to modify the terms of a charitable trust. This assumption is incorrect. First, Sanders' trust is actually a private trust created for the charitable purpose of funding the memorial funds of the named hospitals. Second, even if this trust was not a private trust, as we explained earlier, the doctrine of deviation is applicable to both private and charitable trusts. Daloia, supra at 106.
 {¶ 26} A trust established to generally benefit the promotion of health is a per se demonstration of the testator's charitable intent.See Scott, Law of Trusts, at Section 368, p. 130. Sanders' trust was established to create memorial funds at three local hospitals wherein the income earned from the trust was to go. Because Sanders' trust benefitted the general promotion of health, his intent is presumed to be charitable. The burden then shifts to Sanders' heirs to rebut his charitable intent.
 {¶ 27} The only evidence Sanders' heirs offer is a suggestion that Sanders was suffering from a "diminished state of mind" during the last months of his life when he executed his will. They argue that this diminished state of mind is the only way to explain why Sanders, a prominent supporter of Jewish causes and organizations during his lifetime, would leave such a significant portion of his estate to three non-Jewish hospitals. That contention concerning Sanders' mental capacity is wholly speculative, however. Courts are not required to credit speculation. It cannot overcome the general presumption that testators are competent to dispose of their property as they see fit.
 {¶ 28} Even viewing all the evidence in a light most favorable to Sanders' heirs, we cannot find that Sanders' heirs rebutted Sanders' presumed charitable intent. Accordingly, we find no error in the probate court's granting of summary judgment.
 {¶ 29} The second assignment of error is overruled.
 Third Assignment Of Error {¶ 30} "The Trial Court Erred When It Failed To Find As A Matter Of Law That The Testamentary bequest To The Hospitals Was Invalid Under The Mortmain Statute."
 {¶ 31} Ohio's mortmain statute, codified in 1953 as R.C. 2107.06, was repealed in 1985. Wills executed when the statute was in effect remain subject to its provisions. Wendell v. Ameritrust Co. (1994),69 Ohio St.3d 74. When Sanders executed his will in 1955, R.C. 2107.06
provided:
 {¶ 32} "If a testator dies leaving issue, or an adopted child, living, or the lineal descendants of either, and the will of such testator gives, devises or bequeaths the estate of such testator, or any part thereof, to a benevolent, religious, educational or charitable purpose, * * * such will as to such gift, devise or bequest, shall be invalid unless it was executed according to law, at least one year prior to the death of the testator." 114 Ohio Laws 346.
Sanders executed his will on July 20, 1955. He died within the year after that, on December 16, 1955. He left no child, natural or adopted. The heirs argue that they are his "issue" for purposes of the mortmain statute and, in consequence, that the bequest in Sanders' will creating the trust for the benefit of the three hospitals, of which Bank One is now trustee, is invalid. Because it is invalid, the heirs argue, the trust should be dissolved and its corpus distributed among them pursuant to the residuary clause of Sanders' will. The probate court rejected the heirs' argument, holding that the mortmain statute is inapplicable to this dispute. The heirs renew their argument on appeal.
 {¶ 33} The question which the heirs' argument presents is whether they or other Sanders' heirs at law who survived him are his "issue" for purposes of the mortmain statute. They contend that the term as it is used there applies not only to a testator's children, but also to the lineal descendants of the testator's siblings, which they are. Interestingly, when the mortmain statute was first codified as a part of the General code, its preamble read: "If a testator dies leaving issue of his body, or an adopted child . . ." G.C. 10504-5. Broadening the coverage of the statute to the testator's "issue" lends support to the heirs' argument.
 {¶ 34} Appellants rely on a published opinion of the Probate Court of Montgomery County: Third National Bank Trust Co. v. Glendening
(1960), 17 Ohio App.2d 337. That case involved the phrase "issue," as it is used in R.C. 2107.52. That section, the anti-lapse statute, provides that when a will benefits "a relative or the testator" who was dead when the will was executed, or who dies thereafter leaving issue surviving the testator, those issue take the deceased devisee's bequest as the devisee would have done. Glendening held that the term "issue" is not limited to a testator's child or children, but also includes decedents such as the Appellants herein. They ask us to adopt that same interpretation. We decline.
 {¶ 35} R.C. 2107.52, the anti-lapse statute, refers not to the testator's "issue" but only to the issue of a relative of the testator who was benefitted in the will. Paragraph (A) of that section defines relative to include heirs at law. By extension, the heirs of the testator whose connection to him are through the deceased "relative" are likewise his issue for purposes of R.C. 2107.52.
 {¶ 36} Like the anti-lapse statute, the mortmain statute in effect when Sanders executed his will employs the term "issue." That term is used in the alternative with the term "adopted child." The canon of construction, noscitur a sociis, to interpret a general term to be similar to more specific terms in a series, supports a finding that the term "issue" as it appears in the mortmain statute is confined to the testator's natural children. They, like a testator's adopted children, obtain rights of intestate succession in preference to the lineal descendants of the testator's brothers and sisters. R.C. 2105.06. By extension, such lineal descendants of the testator's siblings, as Appellants are, are not among the testator's "issue" for purpose of the mortmain statute.
 {¶ 37} We hold that a testator's heirs at law who are not the lineal descendants of his natural-born children are not his "issue" for purposes of the mortmain statute. R.C. 3107.06. That holding is consistent with the purposes of the mortmain statute, which was to protect a testator's children, who are the natural objects of his bounty, from the effects of charitable requests by the testator that are the product of undue influence.
 {¶ 38} The third assignment of error is overruled.
 Conclusion {¶ 39} Having overruled the assignments of error, we will affirm the judgment from which this appeal was taken.
FAIN, P.J. and YOUNG, J., concur.