JOHNSON, Judge.
This is a petition for a writ of certiorari to the Pollution Control Board of Florida, in which the petitioner seeks a review of two orders of the Pollution Control Board in substance, denying the petitioner’s application for a permit to construct or install or add a 550 megawatt turbine generator on its Northside plant.
A public hearing was held and the petitioner offered in the record in a single written exhibit the results of studies by expert consultants and by scientists in almost all fields of biology and ecology. The Ecological Impact Report by the petitioner, was submitted to the Board as well as recommendations by the staff of experts of the petitioner as well as the recommendations for the Board’s own staff, approving the application. Expert witnesses also testified before the Board, summarizing and explaining the written exhibit. No contrary evidence was offered by the Board or its staff. In fact, the Board’s staff reaffirmed its support of the petitioner’s plan for the Unit Three generator.
The evidence showed that San Carlos Creek was mostly on the 400 acres of land owned by the petitioner, Jacksonville Electric Authority, and that the plans called for the installation of four generators at this site as the need arises. Also it was shown that San Carlos was already ruined as a breeding ground for fish by the existing generators. The tests submitted established the fact that because of the tremendous flow of water into and through Nichols Creek, the Blount Island Channel and the main stream of the St. Johns River, that by the time the discharge from the proposed Unit Three would be mixed in the San Carlos Creek and mixing or holding pond, the discharged water would have no ill effect on the acquatic or fish life in said creeks or river other than San Carlos which was originally intended to be the real holding pond or mixing bowl, so to speak.
In the face of all this evidence rebutting any real damage to the water streams, and in the face of the approval of Jacksonville Electric Authority plan by the Board’s own staff of experts, and without any competent evidence being presented to the Board contrary to the evidence presented by Jacksonville Electric Authority and the Board’s own staff, the Board refused to grant the permit. Upon rehearing, the same results were affirmed, although the Board’s own staff of experts reaffirmed its approval of the plan.
It is to be noted that the Chairman of the Board, Honorable David H. Levin, an able attorney, dissented from the orders of the Board because he did not think the evidence was sufficient to support the finding that there would be a material damage to acquatic life within water under jurisdic *761 tion of the Department. In the rehearing, not only did the Chairman dissent from the order, but also another member of the Board, Honorable George Ruppel, abstained from voting. This is important only in that it is further evidence of the lack of competent evidence to support the findings and conclusions of the Board.
A number of cases have been cited in petitioner’s brief in support of petitioner’s position in which the Supreme Court of Florida has quashed orders of administrative hoards because of lack of competent evidence to support same. We think this case falls clearly within the Supreme Court’s decisions,[1] and that the Board’s Orders of both December 14, 1971, and February 10, 1972, were in error and without detailing out wherein the Board erred, other than treated generally supra, treating all the points raised in the briefs jointly, we do hereby quash the two Orders on review here, and because of the essence of the time period for installation, it is our Order that the Florida Pollution Control Board be and it is hereby directed to issue the permit for construction as originally requested.
We are not unmindful of the need for some control of pollution, and neither are we unmindful that excess control could and would violate the Legislative intent in creating the Pollution Department when such control ignores the need of a continuing growth of economy and industrial development. Ecology and environment, must to some extent yield to the needs and wants of the human factor in our scheme of life and happiness.
The Orders are quashed and the Board mandatorily directed to issue the construction permit for Unit Three as originally requested.
SPECTOR, C. J., and CARROLL, DONALD K., J., concur.

.Caranci v. Miami Glass & Engineering Company, 99 So.2d 252 (Fla.App.3rd, 1957) ; De Groot v. Sheffield, 95 So.2d 912 (Fla.1957).