IN RE SPECIAL GRAND JURY INVESTIGATING MEDICAID FRAUD & NURSING HOMES; OSWALT, APPELLANT.

IN RE SPECIAL GRAND JURY INVESTIGATING MEDICAID FRAUD AND NURSING HOMES; WEAVER, APPELLANT.

(Nos. 87AP-315 and 87AP-316—Decided November 5, 1987.)

*Anthony J. Celebrezze, Jr.,* attor-

ney general, *Joseph C. Mastrangelo* and *Duane M. White,* for appellee state of Ohio.

*David H. Bodiker,* for appellant Cindy Oswalt.

*William H. Truax,* for appellant Connie S. Weaver.

REILLY, J. This is an appeal from a judgment of the Franklin County Court of Common Pleas.

The defendants herein, in separate actions before the trial court, were found guilty of contempt after refusing to answer questions in direct contravention of a court order granting defendants use and derivative use immunity and ordering them to testify before the grand jury.

Defendant Oswalt advances the following assignment of error:

"The trial court was without authority to grant anything other than 'transactional' immunity to this witness, and the efforts to do something else are without legal effect; a witness without immunity as provided by statute cannot be compelled to answer questions or incriminate herself, and such witness cannot be held in contempt of court for seeking to maintain her Fifth Amendment rights."

Defendant Weaver also raises one assignment of error:

"The trial court's order that appellant testify before the special grand jury after only being granted use and derivative use immunity under section 2939.17, Ohio Revised Code, rather than transactional immunity under section 2945.44, Ohio Revised Code, violated appellant's rights of equal protection and benefit of law under the Fourteenth Amendment to the United States Constitution and Article I, Section 2 of the Ohio Constitution."

Defendant Oswalt alleges that the trial court had no authority under Ohio law except to grant transactional immunity pursuant to R.C. 2945.44. De-

fendant does not disagree that use and derivative use immunity is coextensive with the scope of the Fifth Amendment privilege and is sufficient to compel testimony over a claim of privilege. See *Kastigar* v. *United States* (1972), 406 U.S. 441. In support of her position, however, defendant maintains that R.C. 2939.17 is a general section and does not delineate the scope of the privilege involved and, consequently, R.C. 2945.44 is determinative. As to this issue, R.C. 2939.17 provides, in relevant part, that:

"Whenever a witness is necessary to a full investigation by the attorney general under this section, or to secure or successfully maintain and conclude a prosecution arising out of any such investigation, the judge of the court of common pleas *may grant to such witness immunity from any prosecution based on the testimony or other evidence given by the witness* in the course of the investigation or prosecution other than a prosecution for perjury in giving such testimony or evidence." (Emphasis added.)

Admittedly, on its face, R.C. 2939.17 does not provide for the granting of use and derivative use immunity. The Supreme Court, however, in *State* v. *Sinito* (1975), 43 Ohio St. 2d 98, 72 O.O. 2d 54, 330 N.E. 2d 896, construed a similar statute wherein the language was nearly identical to that language emphasized above in R.C. 2939.17. In *Sinito,* the defendant was subpoenaed to testify before a special grand jury and, in exchange for his testimony, he was offered immunity under former R.C. 2945.44 (Am. Sub. H.B. No. 511, 134 Ohio Laws, Part II, 1866, 1995), which provided, in relevant part, that:

" 'Whenever the testimony or other evidence in possession of a person is necessary to a full and complete investigation of any criminal conduct, or to secure or successfully maintain and conclude a prosecution, and when

in such case it appears in the interests of justice to do so, a judge of the Court of Common Pleas or Court of Appeals, or a justice of the Supreme Court *may grant to such person immunity from any prosecution based on his testimony or other evidence given by him,* other than a prosecution for perjury or tampering with evidence.' " (Emphasis added.) *Id.* at fn. 1.

After refusing to testify, defendant was held in contempt by the court of common pleas. The defendant argued that the immunity granted was not commensurate with his Fifth Amendment privilege. The court in *Sinito* rejected defendant's argument holding that: "R.C. 2945.44, which grants immunity to a person 'from any prosecution based on his testimony or other evidence given by him,' provides both use and derivative use immunity. (R.C. 2945.44, construed.)" *Id.* at syllabus. The court's decision was predicated upon *Kastigar.*

The fact that former R.C. 2945.44 has since been repealed, May 30, 1978, is irrelevant as the pertinent language in that former statutory section is nearly identical to the language emphasized above in R.C. 2939.17, which was found by the court in *Sinito* to provide both use and derivative use immunity.

R.C. 2939.17 was the appropriate statutory section for the trial court to grant defendant Oswalt use and derivative use immunity. Defendant was subpoenaed to testify before a special grand jury and the court only had to grant "* * * immunity from the use of compelled testimony and evidence derived therefrom ('use and derivative use' immunity) * * *" (*Kastigar* at 443), since such immunity is coextensive with the scope of defendant's Fifth Amendment privilege. As the court stated in *Kastigar,* "* * * [i]mmunity from the use of compelled testimony, as well as evidence derived

directly and indirectly therefrom, affords this protection. * * *" *Id.* at 453.

Transactional immunity granted to witnesses under R.C. 2945.44 pertains only to criminal proceedings in this state or in any criminal or civil proceeding brought pursuant to R.C. 2923.31 to 2923.36. In this case, we are dealing with the granting of use and derivative use immunity to witnesses who have refused to testify before a special grand jury called by the Attorney General pursuant to R.C. 2939.17. Thus, the court correctly granted defendant Oswalt use and derivative use immunity pursuant to R.C. 2939.17. Upon her refusal to testify, the court properly found her in contempt and lawfully ordered her to be confined until she obeyed the court order.

Defendant Oswalt's assignment of error is overruled.

Defendant Weaver, in her assignment of error, does not challenge the holding in *Kastigar* as applied here nor does defendant Weaver argue that R.C. 2939.17 does not provide for use and derivative use immunity. The basis for defendant's argument is that R.C. 2939.17 and 2945.44 impermissibly carve out two classes of witnesses whereby, under R.C. 2939.17, use and derivative use immunity is granted to compel testimony over a claim of the Fifth Amendment privilege, while those witnesses under R.C. 2945.44 are granted transactional immunity.

Where a witness has been granted use and derivative use immunity, the prosecution in a subsequent criminal prosecution has the burden of proving affirmatively that the evidence proposed to be used is derived from a legitimate source wholly independent of the compelled testimony. *Kastigar, supra,* syllabus. On the other hand, transactional immunity provides for "* * * immunity from prosecution for offenses to which compelled testimony

relates * * *." *Kastigar* at 443. Transactional immunity "* * * affords a witness considerably broader protection than does the Fifth Amendment privilege. The privilege has never been construed to mean that one who invokes it cannot subsequently be prosecuted. Its sole concern is to afford protection against being 'forced to give testimony leading to the infliction of "penalties affixed to * * * criminal acts." ' " *Kastigar* at 453, citing *Ullman* v. *United States* (1955), 350 U.S. 422, at 438-439, quoting *Boyd* v. *United States* (1886), 116 U.S. 616, at 634. Defendant argues that no rational basis exists for distinguishing between the classes of persons recognizably treated differently under R.C. 2939.17 and 2945.44.

It is well-settled that legislation is presumed to be constitutional and is entitled to a strong presumption of constitutionality. *Roosevelt Properties Co.* v. *Kinney* (1984), 12 Ohio St. 3d 7, 12 OBR 6, 465 N.E. 2d 421; *Columbus* v. *Lenear* (1984), 16 Ohio App. 3d 466, 16 OBR 548, 476 N.E. 2d 1085. The party challenging the constitutionality of the statute, herein the defendant, bears the burden of proving it conflicts with the Ohio and United States Constitutions. *Ohio Fair Plan Underwriting Assn.* v. *Reese* (1984), 17 Ohio App. 3d 54, 17 OBR 108, 477 N.E. 2d 1199. Since it is undisputed that the granting of use and derivative use immunity is coextensive with the scope of the Fifth Amendment privilege, this court must determine whether the statute is rationally related to the accomplishment of a legitimate state objective. See *Shriners' Hospital for Crippled Children* v. *Hester* (1986), 23 Ohio St. 3d 198, 201, 23 OBR 359, 361-362, 492 N.E. 2d 153, 156.

The Ohio Supreme Court, in *Bd. of Edn.* v. *Walter* (1979), 58 Ohio St. 2d 368, 376, 12 O.O. 3d 327, 332, 390 N.E. 2d 813, 819, citing *Allied Stores of Ohio* v. *Bowers* (1959), 358 U.S. 522, 530, 9 O.O. 2d 321, 326, stated that under a rational basis analysis, any classification based "* * * 'upon a state of facts that reasonably can be conceived to constitute a distinction, or differences in state policy * * *' will be upheld * * *." Only if the classifications are wholly unrelated to the accomplishment of a legitimate state objective will there be an equal protection violation. The fact that the classifications created by the two statutes may not be perfect and may result in unjust treatment as to some individuals does not constitute a violation of equal protection so long as the class of which the individual is a part is rationally treated. See *Dandridge* v. *Williams* (1970), 397 U.S. 471.

There has been no violation of defendant Weaver's right to equal protection under the Fourteenth Amendment to the United States Constitution and Article I, Section 2 of the Ohio Constitution, since the statute, R.C. 2939.17, is rationally related to the accomplishment of legitimate state objectives.

The special grand jury, under R.C. 2939.17, is called by the court of common pleas or any judge thereof "* * * [w]henever the governor or general assembly directs the attorney general to conduct any investigation or prosecution * * *" upon written request by the Attorney General. The fact that the Governor or the General Assembly directs the Attorney General to conduct an investigation, such as that involving medicaid fraud or organized crime, is indicative of the oftentimes broad nature of the alleged criminal activity under investigation. Such crimes investigated by a special grand jury concerning matters which have been brought to the attention of the Governor or the Ohio Legislature may be more comprehensive in scope than particular crime situations at the county level. To expedite such investigations,

and in view of the special need to halt potential wide-ranging criminal activity, the legislature could have rationally decided to grant use and derivative use immunity to witnesses compelled to testify before a special grand jury.

There are situations where the Attorney General would be hesitant to request that transactional immunity be granted. If only full transactional immunity were available to a witness, then the Attorney General might forego seeking such immunity and pursue other means of investigation which might not be as successful as that information obtained from the witness' testimony. Hence, an investigation would be unduly delayed and the effectiveness of the investigation decreased.

Accordingly, the classifications serve a legitimate state objective by increasing the likelihood of a timely and thorough investigation into matters of significant public interest and potential statewide importance.

Even if defendant Weaver is correct in contending that there is no conceivable justification for "different treatment between the witnesses involved in the respective criminal proceedings" before a special grand jury as opposed to a prosecuting attorney, there is a rational basis for allotting the Attorney General and prosecuting attorney different powers in granting immunity. This is particularly true where both authorities are investigating the same crime.

For instance, a murder in Franklin County may be linked to an organized crime ring outside the county. The different classifications help to facilitate flexibility and cooperation between the two authorities in their respective proceedings. If the Attorney General sought use and derivative use immunity to compel testimony of a witness relating to a murder linked to organized crime, the prosecuting attorney still would not be foreclosed from prosecuting that witness. The different classifications better serve the above-mentioned legitimate state objectives.

Thus, for the foregoing reasons, defendant Weaver's right to equal protection under the Fourteenth Amendment to the United States Constitution, and Article I, Section 2 of the Ohio Constitution has not been violated.

Therefore, the order of the court requiring defendant Weaver to testify before the special grand jury and granting her use and derivative use immunity under R.C. 2939.17 was lawful. The trial court correctly held that defendant Weaver was guilty of contempt for violation of the court's order and properly ordered her confinement until she complied with the court's order.

Defendant Weaver's assignment of error is overruled.

The judgments of the trial court are affirmed.

*Judgments affirmed.*

McCORMAC and YOUNG, JJ., concur.