626 So.2d 1108 (1993)
Charles MOORMAN and Kathleen Moorman; Your Local Fence, and Monroe County, Appellants,
v.
DEPARTMENT OF COMMUNITY AFFAIRS, Appellee.
No. 92-1785.
District Court of Appeal of Florida, Third District.
November 23, 1993.
Theodore W. Herzog, Key West, for appellants Charles Moorman, Kathleen Moorman, and Your Local Fence.
Katherine Castor, Asst. Gen. Counsel, David L. Jordan, Deputy Gen. Counsel, G. Steven Pfeiffer, Gen. Counsel, and Suzanne Lazear, Certified Legal Intern, Tallahassee, for appellee.
Before SCHWARTZ, C.J., and BASKIN and GERSTEN, JJ.
GERSTEN, Judge.
The appellants, Charles Moorman and Kathleen Moorman (Moorman), and Your Local Fence (Contractor), appeal a final order of the Florida Land and Water Adjudicatory Commission (Commission), rescinding Monroe County fence permits. We reverse.
*1109 Moorman and three other property owners[1] applied for, and received, Monroe County fence permits. The owners' properties are located in various subdivisions within the Big Pine Key Area of Critical County Concern (Area of Critical Concern). Only one property is situated in the natural habitat for Key Deer while the other three properties are not.
Appellee, the Florida Department of Community Affairs (DCA), appealed each permit contending: 1) that the permits were inconsistent with section 9.5-309(e) of the Monroe County Land Development Regulations (MCLDR), because this section bans all fences on Big Pine Key; and 2) that there were no exceptions to this section providing for fences.
The appealed permits were consolidated into a single administrative hearing. At the hearing, the DCA presented testimony of a biologist and an expert in comprehensive planning. Each property owner testified why they desired to fence their property.
One property owner testified that their fence was needed to prevent their three small children from falling into the canal that abuts their backyard. Previously, one child fell into the canal. Additionally, a fence would prevent their dog, a Rottweiler, from harming the Key Deer. The other property owners needed fences to protect their property from trespassers and crime, and to prevent the Key Deer from eating their vegetation.
Significant testimony came from the biologist. He explained that Key Deer are an endangered species whose long term viability is threatened by habitat loss. In his opinion, generally, fences are harmful to Key Deer because they interrupt the normal movements of the animals and exclude habitat. However, he also stated that in some cases fencing might be a good idea.
The biologist did not regard all Big Pine Key subdivisions as habitat for Key Deer. He determined that the Daniels, Hornbacher, and McRae subdivisions were not Key Deer habitat. In his opinion, there was no biological basis for objecting to fences in these areas. However, a fence on the Moorman property would be harmful to Key Deer because it would fence some Key Deer habitat.
The hearing officer found that the fence permits are contrary to section 9.5-309, MCLDR, which bans all fences in the Area of Critical Concern. The hearing officer recommended a final order reversing Monroe County's decision to issue the various permits. Subsequently, the Commission entered a final order adopting the hearing officer's recommended order and rescinded all four Monroe County fence permits.
Appellants assert that the blanket prohibition on fences contained in section 9.5-309(e), MCLDR, is unconstitutional as an invalid exercise of police power. Appellee contends that the fence prohibition is constitutional because it rationally relates to the protection of Key Deer as a species.
The resolution of this issue requires us to seek a harmonious balance between the constitutional right to protect and develop one's property and the right of the Key Deer to exist unfettered. In deciding this issue, we must review the statutory and regulatory framework.
Section 380.0552, Florida Statutes (1991), designates the Florida Keys as an area of critical state concern. The statute's intent was to establish, inter alia, "a land use management system that protects the natural environment of the Florida Keys" and protects "the constitutional rights of property owners to own, use, and dispose of their real property." § 380.0552(2)(a), (2)(f), Fla. Stat. (1991).
Similarly, Monroe County designated most of Big Pine Key, "An Area of Critical County Concern" in the MCLDR. Section 9.5-479(b) provides:
(b) Purpose: The purpose of the Big Pine Key Area Of Critical County Concern is to establish a focal point planning effort directed at reconciling the conflict between reasonable investment backed expectations *1110 and the habitat needs of the Florida Key Deer which is listed as endangered under the Federal Endangered Species Act.
In 1986, section 9.5-479(c)(3), MCLDR, provided that Monroe County would have twelve months to complete the focal point plan for Big Pine Key. One of the purposes of the focal point plan was to provide criteria for permitting fences in designated areas within the Area of Critical Concern. After more than five years, Monroe County failed to complete a focal point plan.
Consequently, section 9.5-309(e), MCLDR, remained the only regulation governing fences in the Area of Critical Concern. This section provides:
It is the purpose of this section to regulate fences and freestanding walls in order to protect the public health, safety and welfare.
* * * * * *
(e) Big Pine Key Area of Critical County Concern: No fences shall be erected here until such time as this chapter is created to provide for the regulation of fences within this [Area of Critical County Concern].
Given this scenario, we address the constitutionality of section 9.5-309(e).
Statutes relating to environmental land and water management require a balancing of the state's interests in protecting the public's health, safety, and welfare against the constitutionally protected private property interests of the landowner. Graham v. Estuary Properties, Inc., 399 So.2d 1374, 1377 (Fla.), cert. denied, 454 U.S. 1083, 102 S.Ct. 640, 70 L.Ed.2d 618 (1981). The "exercise of the state's police power must relate to the health, safety, and welfare of the public and may not be arbitrarily and capriciously applied." Id. at 1379.
In addition, due process also requires that "the means selected by the legislature bear a reasonable and substantial relation to the purpose sought to be attained." In re Forfeiture of 1969 Piper Navajo, 592 So.2d 233, 235 (Fla. 1992); Art. I, § 9, Fla. Const.
"Reasonable restrictions upon the use of property in the interest of the public health, welfare, morals, and safety are valid exercises of the state's police power." Sarasota County v. Barg, 302 So.2d 737, 741 (Fla. 1974). However, "[w]hen a particular attempted exercise of the police power by a state, or under its authority, passes the bounds of reason and assumes the character of a merely arbitrary fiat, it will be stricken down and declared void." Carroll v. State, 361 So.2d 144, 146 (Fla. 1978).
"[E]very reasonable doubt must be indulged in favor of the act. If it can be rationally interpreted to harmonize with the Constitution, it is the duty of the court to adopt that construction and sustain the act." Id. (quoting Holley v. Adams, 238 So.2d 401, 404 (Fla. 1970)).
We recognize that the state's interest in protecting endangered species is a legitimate governmental interest. See Moviematic Indus. Corp. v. Board of County Comm'rs, 349 So.2d 667 (Fla. 3d DCA 1977) (preserving the ecological balance of a particular area is a valid exercise of police power). However, we must decide whether the means chosen by the legislature (the absolute ban against fences on Big Pine Key in section 9.5-309, MCLDR), is narrowly tailored to achieve the state's objective of protecting the Key Deer through the least restrictive alternative. See In re Forfeiture of 1969 Piper Navajo, 592 So.2d at 235.
The DCA's expert testimony established the impropriety of a blanket prohibition on fences. The biologist testified that some fences would not harm the Key Deer. In fact, some fencing would be beneficial to them. The same expert testified that in three out of the four cases requesting a permit, there was no biological basis for denying the fences.
Thus, the complete ban on all fences in Big Pine Key does not accomplish either of the two goals of the legislation: 1) the ban on all fences does not always protect the Key Deer as some deer can be harmed in places where there are no fences; and 2) the fence ban does not recognize the individual's right to protect, enjoy and use one's property. Therefore, the fence regulation clashes with Florida's constitution.
*1111 Although we recognize one of the cardinal rules in reviewing the constitutionality of a statute is "never to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied," Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 501, 105 S.Ct. 2794, 2800, 86 L.Ed.2d 394 (1985) (quoting United States v. Raines, 362 U.S. 17, 21, 80 S.Ct. 519, 522, 4 L.Ed.2d 524 (1960)), based upon the record before us, there was simply no showing that the statute was unconstitutional as applied.
Accordingly, we hold section 9.5-309(e), MCLDR, is facially unconstitutional because the method chosen by the legislature is not narrowly tailored to achieve the state's objective of protecting the Key Deer. See In re Forfeiture of 1969 Piper Navajo, 592 So.2d at 235. This is particularly so because property rights are protected by numerous provisions in the Florida Constitution.
Article I, section 2 provides that "[a]ll natural persons are equal before the law and have inalienable rights, among which are the right ... to acquire, possess and protect property... ." Article I, section 9 provides that "[n]o person shall be deprived of life, liberty or property without due process of law... ." Article I, section 23 provides that "[e]very natural person has the right to be let alone and free from governmental intrusion into his private life... ."
"These property rights are woven into the fabric of Florida history." Shriners Hospitals for Crippled Children v. Zrillic, 563 So.2d 64, 67 (Fla. 1990). So long as the public welfare is protected, every person in Florida enjoys the right to possess property free from unreasonable government interference. Id.
We are aware of the need to protect and preserve endangered species. However, the "[e]cology and environment must to some extent yield to the needs and wants of the human factor in our scheme of life and happiness." Jacksonville Elec. Auth. v. Pollution Control Bd., 270 So.2d 759, 761 (Fla. 1st DCA 1972). Here, there was evidence that children's lives were in danger on their own property because of the ban on fences. We must be careful not to escalate the goal of preservation of an animal species over human life.
Accordingly, we reverse the order entered below because section 9.5-309(e), MCLDR, is unconstitutional.
BASKIN and GERSTEN, JJ., concur.
BASKIN, Judge (concurring).
The partial dissent concludes that the "section in question is invalid as it applies to the appellants' particular fence." Op. at 1111. That conclusion ignores the fact that appellants' home is within key deer habitat and is properly subject to fencing regulations for environmental protection purposes. Thus, the majority holds that the record does not support a finding that the statute is unconstitutional as applied. Op. at 1111. The statute is unconstitutional where, as here, the restriction constitutes unreasonable government interference in appellants' constitutionally protected property rights. See Shriners Hosps. for Crippled Children v. Zrillic, 563 So.2d 64, 68 (Fla. 1990); Art. I, § 2, Fla. Const. For these reasons, I concur in the majority opinion.
SCHWARTZ, Chief Judge (specially concurring in part, dissenting in part).
I concur in the result and in the opinion only to the extent that it determines that the section in question is invalid as it applies to the appellants' particular fence. See Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985); Fardig v. Municipality of Anchorage, 803 P.2d 879 (Alaska Ct. App. 1990); Palm Beach Mobile Homes, Inc. v. Strong, 300 So.2d 881 (Fla. 1974); Monroe County v. Gonzalez, 593 So.2d 1143 (Fla. 3d DCA 1992). It is neither necessary nor appropriate to strike down the entire regulation which may well be  indeed apparently is  otherwise an appropriate and valid exercise of the state's police power authority to protect our environment and wildlife. See Graham v. Estuary Properties, Inc., 399 So.2d 1374, 1381 (Fla. 1981), cert. denied, 454 U.S. 1083, 102 S.Ct. 640, 70 L.Ed.2d 618 (1981); Sarasota County v. Barg, 302 So.2d 737, 741 (Fla. 1974); State ex *1112 rel. Wilcox v. T.O.L., Inc., 206 So.2d 69, 71-72 (Fla. 4th DCA 1968).
NOTES
[1] The other property owners were Nicholas and Jean Hornbacher (Hornbacher), James and Kathryn Daniels (Daniels), and Raymond and Rosemarie McRae (McRae). They were respondents below but are not parties to this appeal.