OPINION
{¶ 1} Appellant, the Ohio Bureau of Workers' Compensation ("BWC"), appeals from an Allen County Common Pleas Court decision granting summary judgment in favor of Appellees, Steven B. Plumb and Joseph C. DaPore. BWC argues that summary judgment was inappropriate because a material issue of fact remains concerning the formation of the settlement proposal between itself and Appellees. Finding that a material issue of fact does in fact remain, we must reverse the decision of the trial court and remand this case for further proceedings consistent with this opinion.
 {¶ 2} In January of 1999, Plumb received serious bodily injuries when he was struck by a semi-truck owned by Orbit Transportation ("Orbit"). Because of the injuries he sustained, Plumb received benefits and compensation from BWC. Subsequently, Plumb filed suit against Orbit. BWC later joined the suit as a plaintiff claiming subrogation rights based upon R.C. 4123.931.
 {¶ 3} On June 22, 2001, DaPore, Plumb's attorney, sent Attorney James E. Swaim, special counsel to the Attorney General and representative of BWC in this case, a settlement proposal. The proposal included a check for $17,552.71 and a proposed entry of dismissal with prejudice. On June 25, 2001, Swaim received Plumb's settlement offer and signed the proposed entry of dismissal with prejudice. That same day, Swaim had a telephone conversation with Stephen A. Bailey, Orbit's attorney, in which Bailey authorized Swaim to sign Bailey's name to the proposal. Sometime between June 25 and June 28, 2001, Swaim mailed the signed proposal to Bailey.
 {¶ 4} At 9:00 a.m. Wednesday on July 27, 2001, the Supreme Court of Ohio announced Holeton v. Crouse Cartage Co.[1] in which it held that BWC's right of subrogation under R.C. 4123.931 was unconstitutional. The next day, July 28, 2001, Plumb's attorney, Joseph DaPore, sent a letter to Swaim attempting to revoke the settlement proposal, and informing Swaim that payment had been stopped on the check originally enclosed with the settlement proposal. That same day, the signed dismissal entry was filed at 8:31 a.m. in the Allen County Common Pleas Court, and the settlement check was presented for deposit but rejected due to the stop payment order.
 {¶ 5} Subsequently, BWC brought suit against Plumb and DaPore to enforce the settlement agreement. The trial court found that Plumb's settlement offer was based upon the actual dismissal of the subrogation claim not the promise of dismissal. The court then found that because the actual dismissal was not filed until after the Court's decision inHoleton, there was no consideration to support a contract and granted summary judgment in favor of Plumb.
 {¶ 6} BWC presents the following assignment of error for our review.
The trial court erred in granting defendants'-appellees motion for summary judgment (Judgment Entry, April 2, 2003)
 {¶ 7} BWC maintains that summary judgment was improper because there remained several material issues of fact, including when the contract was formed, what was the consideration for the contract, and the sufficiency of such consideration.
 Standard of Review {¶ 8} An appellate court reviews a summary judgment order de novo.[2] Summary judgment is appropriate when, looking at the evidence as a whole: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) construing the evidence most strongly in favor of the nonmoving party, it appears that reasonable minds could only conclude in favor of the moving party.[3] If any doubt exists, the issue must be resolved in favor of the nonmoving party.[4]
 {¶ 9} The party moving for the summary judgment has the initial burden of producing some sort of evidence that affirmatively demonstrates the lack of a genuine issue of material fact.[5] The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; it may not rest on the mere allegations or denials of its pleadings.[6]
 Continued Viability of R.C. 4123.931 {¶ 10} With its decision in Holeton, the Supreme Court found that the subrogation right of BWC based upon R.C. 4123.931 was unconstitutional. In our current case, BWC's claim against Plumb was based exclusively on its subrogation right arising under R.C. 4123.931. Plumb's settlement offer was based upon him giving BWC $17,552.71 in consideration for BWC dismissing its subrogation claim against Plumb. The question that remains after the Holeton decision is whether the promise to dismiss rights arising under a statute that has been deemed unconstitutional can be valid consideration for a contract.
 {¶ 11} Under Ohio law, consideration is a requisite for any valid contract.[7] "Consideration may consist of either a detriment to the promisee or a benefit to the promisor. A benefit may consist of some right, interest or profit accruing to the promisor, while a detriment may consist of some forbearance, loss or responsibility given, suffered or undertaken by the promisee."[8]
 {¶ 12} Ordinarily, a statute that is found unconstitutional would confer no rights or obligations upon anyone.[9] When considering the effect of an unconstitutional statute, "it is in legal contemplation as though it had never passed."[10] Nonetheless, the Supreme Court has recognized an exception when contractual rights have arisen under the statute prior to that statute being found unconstitutional.[11]
"[G]enerally, a decision of this court overruling a previous decision is to be applied retrospectively with an exception for contractual or vested rights that have arisen under the previous decision. This reasoning applies with similar force when the court's decision strikes down a statute as unconstitutional."[12]
 {¶ 13} In Clark v. Bureau of Workers' Compensation, the 10th District applied Wendell and Peerless and held that settlement contracts BWC had entered into before R.C. 4123.931 was found unconstitutional were valid.[13]
 {¶ 14} Applying the aforementioned law, if BWC's contract rights arose after R.C. 4123.931 was deemed unconstitutional, the consideration would be invalid because there would be no loss or forbearance on its part. However, if BWC's contract rights arose prior to Holeton, the decision would not apply retroactively, and the contract would be valid despite R.C. 4123.931 being declared unconstitutional. Therefore, the next step is to identify when, if ever, a contract was formed between BWC and Plumb.
 Contract Formation {¶ 15} The construction of written contracts is a matter of law.[14] Besides consideration, a contract also requires both an offer and acceptance to be enforceable.[15] An offer is defined as, "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it."[16] The letter DaPore sent BWC was clearly an offer. It manifested both intent and willingness to enter into a settlement agreement. DaPore even referred to the June 22 "offer" in his brief.
 {¶ 16} The offeror of a contract can limit or restrict the offeree's manner of acceptance.[17] The trial court found that Plumb's offer required actual dismissal of the case. However, the only instructions given in his offer were contained in the last paragraph, which states, "[i]f this payment is acceptable please sign the enclosed entry and forward it to Atty. Stephen A. Bailey." DaPore only required Swaim to sign and forward the dismissal entry to become bound under the offer's terms.
 {¶ 17} Plumb, as the offeror, could have required Swaim to actually file the dismissal before a contract would arise. However, this was not contemplated by the parties. Swaim was not supposed to file the actual dismissal entry. His only requirement was to sign the dismissal entry and forward it to Bailey. Accordingly, both BWC and Plumb became bound once Swaim signed and forwarded the dismissal entry.
 {¶ 18} Appellees also contends that Swaim's acceptance was improper because it varied materially from the terms of the offer. They correctly asserts that an acceptance must contain no material variance from the terms of the offer.[18] The entry of dismissal that Plumb sent to Swaim had signature lines for three attorneys: Joseph Dapore, Stephen Bailey, and James M. Evans. Evans was Swaim's predecessor as the representative for BWC in Plumb's case. The Appellees claim that the dismissal entry needed Evan's signature not Swaim's. However, the letter sent with the entry of dismissal was clearly addressed to Swaim, and it clearly requested Swaim to sign it. After directing Swaim to sign the dismissal, the Appellees cannot now complain of any variance Swaim's signature caused.
 {¶ 19} The parties do not dispute that at some point Swaim signed and forwarded the entry of dismissal as required by Plumb's offer. What is in dispute is when Swaim actually did so. If Swaim signed and forwarded the entry of dismissal prior to the Supreme Court's decision inHoleton, then a valid contract was formed that would not be affected retroactively. However, if Swaim did so after Holeton, then the holding would cause the contract to be devoid of consideration. Because the exact time of Swaim's signing and mailing the letter is in dispute, a material issue of fact remains, thus, we sustain BWC's assignment of error. Accordingly, we must reverse the decision of the trial court and remand for further proceedings on this issue.
 {¶ 20} Having found error prejudicial to the appellant herein, in the particulars assigned and argued, we reverse the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.
Judgment reversed and cause remanded.
SHAW and CUPP, JJ., concur.
[1] (2001), 92 Ohio St.3d 115.
[2] Hillyer v. State Farm Mut. Auto Ins. Co. (1996), 131 Ohio App.3d 172,175.
[3] Civ.R. 56(C); Horton v. Harwick Chem. Corp. (1995),73 Ohio St.3d 679, 686-687.
[4] Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356, 358-359.
[5] State ex rel. Burnes v. Athens City Clerk of Courts (1998),83 Ohio St.3d 523, 523; see, also, Dresher v. Burt (1996),75 Ohio St.3d 280, 293.
[6] Id.
[7] Brads v. First Baptist Church (1993), 89 Ohio App.3d 328, 336
(citations omitted).
[8] Id.
[9] Middletown v. Ferguson (1986), 25 Ohio St.3d 71, 80.
[10] Id.
[11] Wendell v. Ameritrust Co. (1994), 69 Ohio St.3d 74, 77; PeerlessElectric Co. v. Bowers (1955), 164 Ohio St. 209, 210; Clark v. Bur. ofWorkers' Comp., 10th Dist. No. 02AP-743, 2003-Ohio-2193, at ¶ 9.
[12] Wendell, 69 Ohio St.3d at 77, citing Peerless Electric Co.,164 Ohio St. 209.
[13] Clark at ¶ 11; see, also, Parsons v. Bur. of Workers'Comp., Ohio Ct. Cl. No. 2001-07513, 2003-Ohio-3711, at ¶ 10-12.
[14] Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, paragraph one of the syllabus.
[15] Sash Storm, Inc. v. Thompson (Dec. 11, 1998), 3rd Dist. No. 1-98-47, unreported; Hocking Valley Community Hosp. v. Community HealthPlan of Ohio, 4th Dist. App. No. 02CA28, 2003-Ohio-4243, at ¶ 13.
[16] Hocking Valley Community Hosp. at ¶ 14, quoting LeasewayDistribution Centers, Inc. v. Ohio Dept. of Adm. Serv. (1988),49 Ohio App.3d 99, 105, citing Restatement of the Law 2d, Contracts (1981), 71.
[17] Foster v. Ohio State Univ. (1987), 41 Ohio App.3d 86, 87-88, citing Corbin on Contracts (1963) 157-166, Sections 38 and 39.
[18] Goldfarb v. The Robb Report, Inc. (1991), 77 Ohio App.3d 362,368, citing Karas v. Brogan (1978), 55 Ohio St.2d 128, 129; cf. Fosterv. Ohio State Univ. (1987), 41 Ohio App.3d 86, 88.