OPINION
{¶ 1} The plaintiff-appellant, Julie A. Tucker, appeals the judgment of the Henry County Court of Common Pleas granting summary judgment in favor of the defendant-appellee, Life Line Screening of American (hereinafter "Life Line").
 {¶ 2} In June 2001, Tucker was hired by Life Line as an assistant team manager for the Toledo area. To apply, Tucker completed and signed an employment application that stated:
If I am hired, I understand that I am free to resign at any time, withor without cause and without prior notice, and the employer reserves thesame right to terminate my employment at any time, with or without causeand without prior notice, except as may be required by law. Thisapplication does not constitute an agreement or contract for employmentfor any specified period or definite duration. I understand that nosupervisor or representative of the employer is authorized to make anyassurances to the contrary and that no implied oral or written agreementscontrary to the foregoing express language are valid unless they are inwriting and signed by the employer's president.
Application for Employment.
 {¶ 3} When Tucker was hired, she received a letter from Life Line that discussed training, benefits and salary. The letter also stated that Tucker's "employment with Life Line is at-will. This means that neither you nor Life Line Screening has entered into a contract regarding the duration of your employment." Employment Letter, June 19, 2001.
 {¶ 4} At training, Tucker received a copy of the Life Line employee manual. In the front of the employee manual was a note from Life Line's President that stated:
This Employee Manual should provide answers to most of the questionsyou may have about Life Line Screening's benefit programs, as well ascompany policies and procedures. Please take the time to read andunderstand this manual as you are expected to know its contents and tocomply with the stated policies and procedures.
Employee Manual at p. ii. The introduction section of the employee manual outlined an "at-will employment" section that stated:
Your employment with Life Line Screening is at-will. This means thatneither you nor Life Line Screening has entered into a contract regardingthe duration of your employment. You are free to terminate youremployment with Life Line Screening at any time, with or without reason.Likewise, Life Line Screening has the right to terminate youremployment, or otherwise discipline, transfer, or demote you at anytime, with or without reason, at the discretion of Life Line Screening.
 Employees of Life Line Screening can only enter into an employmentcontract for a specified period of time, or make any agreement contraryto this policy with written approval from a company officer.
Id. at iii.
 {¶ 5} Tucker signed a "Receipt and Acknowledgement of Life Line Screening Employment Manual" that reiterated the "at-will employment" section on page iii, supra, of the manual. Finally, the employee manual provided a "Positive Discipline" section that highlights certain procedures that may be used when disciplining an employee. That section states:
Positive Discipline refers to an approach for corrective action withbetween employees and Life Line [sic] that ensures full communication andcooperative correction. This policy pertains to matters of conduct aswell as the employee's competence. However, if you do not displaysatisfactory performance and accomplishment on the job, you may bedismissed, in certain cases, without resorting to the steps set forth inthis policy. Positive discipline does not change the fact that employmentis "at will."
 Under normal circumstances, managers are expected to follow theprocedure outlined below. There may be a particular situation, however, inwhich the seriousness of the offense justifies the omission of one ormore of the steps in the procedure. Likewise, there may be time when LifeLine Screening may decide to repeat a disciplinary step. * * *
 Unacceptable behavior which does not lead to immediate dismissal may bedealt with in the following manner:
 1. Oral Reminder 2. Written Reminder 3. Decision-Making PaidLeave/Counseling Session 4. Termination/Resignation
 To ensure that the business of Life Line Screening is conductedproperly and efficiently, you must conform to certain standards ofattendance, conduct, work performance and other work rules andregulations. When a problem in these areas does arise, your supervisorwill coach and counsel you in mutually developing an effective solution.
Id. at I-11.
 {¶ 6} Tucker was employed as an assistant team manager for Life Line from June 2001 to August 2003. Occasionally, Tucker also acted as team manager when a team manager was not available.
 {¶ 7} In April 2003, Tucker's supervisor, Matt Kovacic, received reports that Tucker had exhibited rude behavior at a job site on two separate occasions. Kovacic contacted Tucker about the alleged conduct, and Tucker denied all the allegations.
 {¶ 8} On April 12, 2003, Kovacic met with Tucker and gave her two "performance notices" regarding her alleged rude behavior. One notice was a "verbal warning" and the other was a "written warning." Tucker again denied the incidents had occurred. Nevertheless, three days later, Life Line terminated Tucker's employment.
 {¶ 9} Tucker filed suit against Life Line in October 2003 alleging wrongful discharge predicated on breach of contract, promissory estoppel, quantum meruit, and equitable estoppel. On August 6, 2004, Life Line filed a motion for summary judgment, and Tucker filed a motion in opposition. A non-record hearing was held on September 3, 2004, and on September 30, 2004, the trial court entered judgment in favor of Life Line. Tucker appeals alleging one assignment of error.
The trial court erred by granting defendant's motion for summaryjudgment as to counts I, II, and III of plaintiff's second amendedcomplaint alleging, respectively: breach of contract; promissoryestoppel; and estoppel.
 {¶ 10} The standard for review of a grant of summary judgment is one of de novo review. Lorain Nat'l Bank v. Saratoga Apts. (1989),61 Ohio St.3d 127, 129, 572 N.E.2d 198. Thus, such a grant will be affirmed only where there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). In addition, "summary judgment shall not be rendered unless it appears . . . that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence construed most strongly in his favor." Id.
 {¶ 11} The moving party may make his motion for summary judgment in his favor "with or without supporting affidavits[.]" Civ.R. 56(B). However, "[a] party seeking summary judgment must specifically delineate the basis upon which summary judgment is sought in order to allow the opposing party a meaningful opportunity to respond." Mitseff v. Wheeler
(1988), 38 Ohio St.3d 112, 526 N.E.2d 798, syllabus. Summary judgment should be granted with caution, with a court construing all evidence and deciding any doubt in favor of the nonmovant. Murphy v. Reynoldsburg
(1992), 65 Ohio St.3d 356, 360, 604 N.E.2d 138. Once the moving party demonstrates that he is entitled to summary judgment, the burden then shifts to the non-moving party to show why summary judgment in favor of the moving party should not be had. See Civ.R. 56(E). In fact, "[i]f he does not so respond, summary judgment, if appropriate, shall be rendered against him." Id.
 {¶ 12} In Wright v. Honda of America Mfg. (1995), 73 Ohio St.3d 571,574, 653 N.E.2d 381 (internal citations omitted), the Ohio Supreme Court stated:
In general, under the employment-at-will doctrine, the employmentrelationship between employer and employee is terminable at the will ofeither; thus, an employee is subject to discharge by an employer at anytime, even without cause. However, in Mers v. Dispatch Printing Co., wefirst recognized the harshness of this rule and carved out two exceptionsto the employment-at-will doctrine: (1) the existence of implied orexpress contractual provisions which alter the terms of discharge; and(2) the existence of promissory estoppel where representations orpromises have been made to an employee.
On the issue of promissory estoppel, the court opined:
An additional limit on an employer's right to discharge occurs whererepresentations or promises have been made to the employee which fallwithin the doctrine of promissory estoppel. The Restatement of the Law2d, Contracts, as quoted by this court in Talley v. Teamsters Local No.377, provides the rule of law that: "`[a] promise which the promisorshould reasonably expect to induce action or forbearance on the part ofthe promise or a third person and which does induce such action orforbearance is binding if injustice can be avoided only be enforcement ofthe promise. * * *"
 Mers v. Dispatch Printing Co. (1985), 19 Ohio St.3d 100, 104483 N.E.2d 150 (internal citations omitted). On the other hand, in order to be successful in a breach of contract claim against an employer, an employee must show offer, acceptance, and consideration. Tersigni v.Gen. Tire (1993), 91 Ohio App.3d 757, 760, 633 N.E.2d 1140. An offer is "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." State Bureau of Workers' Comp.v. Plumb, 3rd Dist. No. 1-03-27, 2003-Ohio-5290, at ¶ 15.
 {¶ 13} A review of the complaint reveals that Tucker alleges the following facts, which, she contends, constitutes breach of contract, promissory estoppel and equitable estoppel:
 Count I Breach of Contract
* * *
9. Defendant provided Plaintiff an employee handbook which containedtherein a "Positive Discipline" procedure . . . that indicated or impliedthat discipline, if necessary, would be administered in four steps: 1)oral reminder; 2) written reminder; 3) counseling; and 4) termination orresignation. 10. Defendant did not fully and/or properly apply itsprogressive discipline policy/procedures to Plaintiff. 11. By failing toadhere to its progressive discipline policy/procedure Defendant hasbreached its express and/or implied contractual obligation to Plaintiff.* * *
 Count II Promissory Estoppel
* * *
14. Prior to being terminated by Defendant, Plaintiff turned down anoffer of employment from another employer in reasonable reliance ofDefendant's express and/or implied representations.
 15. Plaintiff would not have turned down this offer of employment hadshe known Defendant did not intend to adhere to its progressivediscipline policy/procedures. * * *
 Count III Estoppel
* * *
18. the employee handbook provided Plaintiff by Defendant, requiredPlaintiff to provide 4 weeks notice to Defendant prior to terminatingemployment.
 19. Prior to being terminated by Defendant, Plaintiff turned down anoffer of employment from another employer in reasonable reliance ofDefendant's notice requirement, as the start date of such otheremployment would not have given Defendant sufficient notice as required.
 20. Plaintiff would not have turned down this offer of employment hadshe known Defendant instead considered her able to terminate withoutnotice under Ohio's at-will employment doctrine.
Complaint at pp 3-4.
 {¶ 14} Preliminarily, we note that Tucker was an employee "at-will" with Life Line; therefore, in order for Tucker to establish a breach of contract claim, she must first establish that a contract existed between her and Life Line beyond the "at-will" relationship. In referring to the employee manual, the instrument on which Tucker relied on in alleging a contract existed, we note that the manual explicitly stated on numerous occasions that Tucker was an "at-will" employee. Furthermore, the "positive discipline" section of the employee manual states:
However, if you do not display satisfactory performance andaccomplishment on the job, you may be dismissed, in certain cases,without resorting to the steps set forth in this policy. Positivediscipline does not change the fact that employment is "at will."
Employee Manual at p. I-11 (emphasis added).
 {¶ 15} According to the complaint, Tucker alleges that the "positive discipline" section of the employee manual created a contract between her and Life Line. However, given the explicit language in that section that "[p]ositive discipline does not change the fact that employment is `at-will,'" we conclude that reasonable minds could not differ in determining that there was no manifestation or invitation to enter into a contractual relationship beyond the "at-will" relationship that already existed.
 {¶ 16} We reach a similar conclusion regarding Tucker's promissory estoppel argument. Again, given the numerous references to "at-will" employment, and, perhaps most importantly, the explicit language in the "positive discipline" section of the employee manual that "positive discipline" does not change the "at-will" employment relationship between Tucker and Life Line, we conclude that reasonable minds could not differ in determining that Tucker, the alleged promisee, could not reasonably rely on the "positive discipline" protocol as a condition precedent to being terminated. Finally, we reject Tucker's estoppel argument because, in carving out exceptions to the "at-will" employment doctrine in Mers,
the Ohio Supreme Court only created two exceptions — express or implied contract and promissory estoppel.
 {¶ 17} Based on the foregoing opinion, the assignment of error is overruled, and the judgment of the trial court is affirmed.
Judgment Affirmed.
 Cupp, P.J. and Rogers, J., concur.